**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID TOMPKINS, an individual, on behalf of himself and others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> 23ANDME, INC., *Defendant-Appellee.* | No. 14-16405 <br><br> D.C. No. 5:13-cv-05682-LHK <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted May 12, 2016
San Francisco, California

Filed August 23, 2016
Amended October 13, 2016

Before: Stephen S. Trott, Sandra S. Ikuta,
and Paul J. Watford, Circuit Judges.

Order;
Opinion by Judge Ikuta;
Concurrence by Judge Watford

## SUMMARY[*]

### Arbitration / California Law

The panel affirmed the district court's order enforcing the terms of a Terms of Service agreement, and granting 23andMe, Inc.'s motion to compel arbitration.

Plaintiffs are a class of 23andMe customers who purchased a DNA test kit and assented to an online Terms of Service, and they challenged the 23andMe arbitration provision under the California doctrine of unconscionability.

The panel held that none of the challenged portions of the arbitration provision, alone or in concert, rendered the arbitration provision unconscionable under current California law.

The panel rejected the plaintiffs' challenges to the arbitration provision.  First, concerning the arbitration provision's prevailing party clause, which provided that the arbitration costs would be borne by the losing party, the panel held that the plaintiffs did not carry their burden of demonstrating unconscionability of the clause where: the bilateral attorneys' fee shifting clause in the Terms of Service was not unconscionable under California law; and the arbitration fee-shifting provision was not unconscionable under the case-specific standard announced in *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). Second, concerning the arbitration provisions' forum

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

selection clause, which stated that arbitration proceedings would be held in San Francisco, California, the panel held that the plaintiffs had not met their burden of proving that the clause was unreasonable. Third, concerning the clause excluding intellectual property claims from mandatory arbitration, the panel held that plaintiffs had not carried their burden of demonstrating that the exemption was unconscionable under current California law. The panel concluded that the arbitration agreement was valid and enforceable under the Federal Arbitration Act, 9 U.S.C. § 2.

The panel also rejected plaintiffs' challenges to provisions in the Terms of Service not contained within the arbitration clause itself. First, the panel held that the agreement's one-year statute of limitations did not make the arbitration provision itself unconscionable under California law where California courts afford parties considerable freedom to modify the length of a statute of limitations, and the statute of limitations in the Terms of Service was not unfairly one-sided. Second, the panel held that a provision giving 23andMe a unilateral right to modify the agreement did not make the arbitration provision itself unconscionable. Judge Watford concurred in the judgment. He agreed with the majority that the arbitration provision was valid and enforceable, albeit for different reasons.

**COUNSEL**

Jeremy Robinson (argued), Jason C. Evans, and Gayle M. Blatt; Casey, Gerry, Schenk, Francavilla, Blatt & Penfield, LLP, San Diego, California; Mark Ankcorn, Ankcorn Law Firm, PC, San Diego, California; for Plaintiff-Appellant.

Robert P. Varian (argued), James N. Kramer, M. Todd Scott, and Alexander K Talarides; Orrick Herrington & Sutcliffe, LLP, San Francisco, California, for Defendant-Appellee.

Jennifer D. Bennett, Public Justice, P.C., Oakland, California; F. Paul Bland, Jr., Public Justice, P.C., Washington, D.C.; for Amicus Curiae Public Justice, P.C.

## ORDER

The opinion filed August 23, 2016, is hereby amended as follows:

On page 28 of the slip opinion:

> <Given this precedent, our authority to review portions of the contract outside the arbitration provision is limited, if it exists at all. Even assuming we can review the two outside provisions, we are limited to considering whether, in the specific circumstances of the parties and the context in which the contract was formed, these outside provisions contribute to making the arbitration provision itself unconscionable.>

is amended to:

> <Given this precedent, our authority to review portions of the contract outside the arbitration provision is limited. But as *Rent-A-Center* indicates, "[i]t may be that" where a plaintiff challenges "the validity under § 2 of the

precise agreement to arbitrate at issue" on the ground that certain general contract provisions "*as applied*" to the agreement to arbitrate render it unconscionable, such a "challenge should [be] considered by the court." 561 U.S. at 71, 74 (emphasis in original).>.

On page 28 of the slip opinion, the following sentence is deleted:

<As a general rule where the arbitration agreement itself is not unconscionable, provisions outside the arbitration agreement will not make it so.>.

On page 29 of the slip opinion:

<Likewise, the unilateral modification clause does not make the arbitration provision itself unconscionable.>

is amended to:

<Likewise, under the circumstances here, the unilateral modification clause does not make the arbitration provision itself unconscionable.>.

No further petitions for rehearing or rehearing en banc will be entertained from this amendment.

## OPINION

IKUTA, Circuit Judge:

Under the terms of the agreement at issue here, the customers of 23andMe, Inc., were required to arbitrate the present action.  The district court enforced the terms of that agreement and granted 23andMe's motion to compel arbitration.  We hold that none of the challenged portions of the arbitration provision, alone or in concert, render the arbitration provision unconscionable under current California law.  We therefore affirm.

I

23andMe, Inc., provides a direct-to-consumer genetic testing service, which it calls the "Personal Genome Service." A customer interested in obtaining the genetic testing service must visit the 23andMe website to purchase an online DNA testing kit.  When purchasing the kit, the customer can click on a link to the company's Terms of Service that was available at the bottom of the webpage.  However, the customer is not required to read or click through the terms before making a purchase.

After receiving the kit, the customer returns to the website to create an online account with 23andMe to register the DNA kit.  At this stage, and in order to proceed to use the genetic testing service, a customer has to click on a box indicating agreement to the Terms of Service.  The Terms of Service is a multipage agreement which states that it constitutes the entire agreement between 23andMe and its customers.  Paragraph 28(b) of the Terms of Service contains a mandatory arbitration provision which states, in full:

Applicable law and arbitration. Except for disputes relating to intellectual property rights, obligations, or any infringement claims, any disputes with 23andMe arising out of or relating to the Agreement ("Disputes") shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods. Any Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association, to be held in San Francisco, California, in English, with a written decision stating legal reasoning issued by the arbitrator(s) at either party's request, and with arbitration costs and reasonable documented attorneys' costs of both parties to be borne by the party that ultimately loses. Either party may obtain injunctive relief (preliminary or permanent) and orders to compel arbitration or enforce arbitral awards in any court of competent jurisdiction.

After conducting a self-test, a customer would send the completed DNA kit to 23andMe, which performed the genetic testing services and provided the results to the customer.

Until 2013, 23andMe claimed that its service could be used to help customers manage health risks, as well as prevent or mitigate diseases such as diabetes, heart disease, and breast cancer. In November 2013, the Food and Drug

Administration (FDA) told 23andMe to discontinue marketing its services for health purposes until the company obtained government approval. The company then ceased its health-related marketing.

As a result of the FDA's determination, multiple plaintiffs filed different class actions against 23andMe relating to the company's health claims. The claims were consolidated by agreement in federal district court in the Northern District of California. David Tompkins represents a consolidated class of customers bringing a number of separate causes of actions against 23andMe for unfair business practices, breach of warranty, and misrepresentations about the health benefits of 23AndMe's services. All the named plaintiffs in the present action purchased a DNA test kit, created an online account with 23andMe to register their DNA kits, and assented to the Terms of Service.

In April 2014, 23andMe filed a motion to compel all plaintiffs to arbitrate their claims. A few months later, the district court granted 23andMe's motion. After reviewing the mandatory arbitration provision in the Terms of Service, the district court concluded that although the arbitration provision was procedurally unconscionable, it was not substantively unconscionable and therefore was enforceable under California law. The court held that plaintiffs' other challenges to the Terms of Service had to be determined by the arbitrator in the first instance. Plaintiffs timely appealed.

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2) because the parties satisfied minimal diversity and the amount in controversy exceeded $5 million. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). We "review *de novo* district court decisions about the

arbitrability of claims." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). We review factual findings for clear error, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009), and review "[t]he interpretation and meaning of contract provisions" de novo, *Lee v. Intelius Inc.*, 737 F.3d 1254, 1258 (9th Cir. 2013).

## II

In order to determine whether a state legislative or common law rule makes an agreement to arbitrate unenforceable, we must consider both the federal law of arbitration and the state rule at issue.

## A

Congress enacted the Federal Arbitration Act (FAA) in 1925 in order to "counter prevalent judicial refusal to enforce arbitration agreements." *Mortensen v. Bresnan Comm'ns,* 722 F.3d 1151, 1157 (9th Cir. 2013). Section 2 of the FAA makes a written provision in a contract to settle a controversy by arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] "Section 2 is a congressional

---

[1] 9 U.S.C. § 2 states, in full:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or

declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration. *Moses H Cone*, 460 U.S. at 24–25; *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).

The Supreme Court has long made clear that the FAA's "national policy favoring arbitration" also applies to the states. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The FAA forecloses both "state legislative attempts to undercut the enforceability of arbitration agreements," *id.*, at 16, and state common law principles that interfere with "the enforcement of arbitration agreements according to their terms," *Concepcion*, 563 U.S. at 344. The text of the FAA makes only one exception to the validity of an arbitration agreement: the savings clause in § 2 provides that a court may strike or limit an arbitration provision on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The savings clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's*

refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "[I]n assessing the rights of litigants to enforce an arbitration agreement" a court may not "construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

Even when the state rule at issue is "a doctrine normally thought to be generally applicable," such as unconscionability, it may nevertheless be preempted if it has been "applied in a fashion that disfavors arbitration," *Concepcion*, 563 U.S. at 341, or in a manner that, in practice, would "have a disproportionate impact on arbitration agreements," *id.* at 342. We have interpreted this rule broadly, holding that "[a]ny general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA." *Mortensen*, 722 F.3d at 1159.

The plaintiffs here challenge the 23andMe arbitration provision under the California doctrine of unconscionability. Under the savings clause in § 2, we must first determine whether California has a generally applicable unconscionability doctrine that would make the arbitration provision invalid. In discerning California law, "[d]ecisions of the California Supreme Court, including reasoned dicta, are binding on us as to California law." *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). "When the state's highest court has not squarely addressed an issue, we must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treaties and restatements for guidance." *Glendale Assocs., Ltd. v. NLRB*, 347 F.3d 1145, 1154 (9th Cir. 2003) (internal quotation marks omitted).

"Decisions of the six district appellate courts are persuasive but do not bind each other or us," although we generally will "follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it." *Muniz*, 738 F.3d at 219.

B

Under California law, a state court may refuse to enforce a provision of a contract if it finds that the provision was "unconscionable at the time it was made." Cal. Civil Code § 1670.5(a). Courts may find a contract as a whole "or any clause of the contract" to be unconscionable. *Id.* The party asserting that a contractual provision is unconscionable bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* at 910 (internal quotation marks omitted). Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable, but they need not necessarily be present to the same degree. *Armendariz v. Found. Health Psychcare Services*, 24 Cal. 4th 83, 114 (2000). Although California courts have characterized "substantive unconscionability" in various ways, "[a]ll of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' but with terms that are 'unreasonably favorable to the more powerful party.'" *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (*Sonic II*).

Under California law, "[a]n evaluation of unconscionability is highly dependent on context." *Sanchez*, 61 Cal. 4th at 911. California courts give the parties "a reasonable opportunity to present evidence as to [the provision's] commercial setting, purpose, and effect," Cal. Civil Code § 1670.5, and then examine the context in which the contract was formed and the "respective circumstances of the parties" as they existed at the formation of the agreement. *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006) (en banc) (quoting *Bolter v. Super. Ct.*, 87 Cal. App. 4th 900, 909 (Cal. Ct. App. 2001)).

The California Supreme Court has recently revisited the general principles of unconscionability under state law, and has explained how they apply to arbitration provisions in light of *Concepcion* and other recent U.S. Supreme Court cases. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016); *Sanchez*, 61 Cal. 4th at 911; *Sonic II*, 57 Cal. 4th at 1143–45. In doing so, the California Supreme Court confirmed that California's "unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements" under the FAA's savings clause. *Sanchez*, 61 Cal. 4th at 912. We are bound by the California Supreme Court's most recent articulation of its standard in determining whether the arbitration provisions challenged by plaintiffs are unconscionable. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1278 (9th Cir. 2013).

III

We now apply these principles to the plaintiffs' claim that the arbitration provision in Paragraph 28(b) of the Terms of

Service is substantively unconscionable.**²**   The plaintiffs challenge the provision's prevailing party clause, the forum selection clause, and the clause excluding intellectual property claims from arbitration.   They claim that these clauses together, along with the one-year statute of limitations and 23andMe's right to modify the Terms of Service, render the provision unenforceable.   We consider these claims in turn.

A

We first turn to the arbitration provision's prevailing party clause, which states that "arbitration costs and reasonable documented attorneys' costs of both parties" will "be borne by the party that ultimately loses."   Plaintiffs claim that this provision is unconscionable because AAA arbitrators charge $1500 a day for arbitration, and 23andMe's "top-tier lawyers" would also have significant charges.

We begin with California cases addressing the enforceability of prevailing party clauses that shift attorneys' fees to the losing party.   The California Supreme Court has held that as a general rule, "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) (quoting *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992)).   A number of California appellate courts have enforced prevailing party clauses under this general rule in the nonarbitration context.   *See Lennar*

---

**²** The parties do not dispute the court's finding that the Terms of Service were procedurally unconscionable, and thus we do not address that question.

*Homes of Cal., Inc. v. Stephens*, 232 Cal. App. 4th 673, 694 (Cal. Ct. App. 2014) ("[T]here is nothing generally absurd or unconscionable about prevailing party clauses."); *Maynard v. BTI Grp., Inc.*, 216 Cal. App. 4th 984, 989 (Cal. Ct. App. 2013) ("It is quite clear from the case law . . . that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves.").

Several state appellate courts have held that provisions shifting attorneys' fees are unconscionable in the arbitration context, *see, e.g.*, *Carmona v. Lincoln Millenium Car Wash, Inc.*, 226 Cal. App. 4th 74, 88 (Cal. Ct. App. 2014), *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1143 (Cal. Ct. App. 2012), *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 799–800 (Cal. Ct. App. 2012). These cases, however, all involved unilateral, rather than bilateral fee-shifting provisions. For instance, *Carmona* considered a provision in an arbitration agreement between a buyer and seller that permitted the seller to recover attorneys' fees and costs whenever it instituted litigation or arbitration, and did not give employees any reciprocal right. The court held that this clause contributed to unconscionability because it was "oppressively one-sided and unenforceable as written" under section 1717 of the California Civil Code. *Id.* at 89. Similarly, *Samaniego* noted that a clause which required the employees to pay attorneys' fees incurred by the employer, but imposed no reciprocal obligation on the employer to pay the employees' fees, "contributes to a finding of unconscionability." 205 Cal. App. 4th at 1147; *see also Ajamian*, 203 Cal. App. 4th at 799 (invalidating a clause that required the employee, but not the employer, to pay both parties' attorneys' fees because "[t]he provision is obviously not mutual and, on that basis alone, is unconscionable and unenforceable.").

By contrast, the plaintiffs have not identified any case where a state appellate court held that a bilateral clause awarding attorneys' fees and costs to the prevailing party was unconscionable, whether in an arbitration or nonarbitration context. Indeed, section 1717 of the California Civil Code appears to approve such bilateral prevailing party clauses, since it requires courts to treat all unilateral prevailing party clauses as if they were bilateral clauses.**[3]**  This rule is equally applicable to contracts of adhesion. *See Sys. Inv. Corp. v. Union Bank*, 21 Cal. App. 3d 137, 163 (Cal. Ct. App. 1971) ("Section 1717 was enacted to make all parties to a contract, especially an 'adhesion contract,' equally liable for attorney's fees and other necessary disbursements.").

In this case, the prevailing party clause is explicitly bilateral, providing that either party can request binding arbitration, and the "arbitration costs and reasonable documented attorneys' costs of both parties [are] to be borne by the party that ultimately loses," whoever that might be. In light of the California Supreme Court's ruling that the standard for unconscionability must be the same for arbitration and nonarbitration agreements, *see Sanchez*, 61 Cal. 4th at 911, and the general rule that parties may validly agree to a bilateral prevailing party clause, *see*

---

**[3]** Section 1717 of the California Civil Code states, in full:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

*Santisas*, 17 Cal. 4th at 608; *see also* Cal. Civ. Code § 1717, we conclude that the bilateral attorneys' fee shifting clause in the Terms of Service is not unconscionable under California law.

Plaintiffs next claim that the portion of the prevailing party clause that shifts the arbitrators' fees to the losing party is unconscionable because it would require consumers to shoulder fees that they would not have to bear in litigation.

We again start with California Supreme Court precedent. Plaintiffs rely on *Armendariz v. Foundation Health Psychcare Services*, which held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal. 4th at 110–11. We have previously struck down arbitration fee-shifting clauses as unconscionable under this *Armendariz* rule. *See, e.g*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010); *Ting v. AT & T*, 319 F.3d 1126, 1135 (9th Cir. 2003).

The California Supreme Court has since indicated that this *Armendariz* rule is limited to the employment context. *See Sanchez*, 61 Cal. 4th at 918–19. In the area of consumer arbitration, *Sanchez* explained, the California legislature took a different approach by enacting section 1284.3 of the California Code of Civil Procedure. *Id*. Section 1284.3 provides that "[a]ll fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer." Cal. Civ. Proc. § 1284.3(b)(1). According to *Sanchez*, this shows the

legislature's decision to adopt "an ability-to-pay approach" to arbitration fees in the consumer context, requiring a "case-by-case determination of affordability" for consumers, and a rejection of the *Armendariz* categorical approach. 61 Cal. 4th at 919. *Sanchez* explained that while "jobseekers are more likely to face 'particularly acute' economic pressure to sign an employment contract with a predispute arbitration provision . . . [c]onsumers, who face significantly less economic pressure, would seem to require measurably less protection." *Id.* at 919–20. Deferring to this legislative determination, *Sanchez* held that in the consumer context, a fee-shifting "provision cannot be held unconscionable absent a showing that appellate fees and costs in fact would be unaffordable or would have a substantial deterrent effect." *Id*. at 920.[4]

Applying this case-specific approach to a provision which made the party appealing an arbitral ruling responsible for filing fees and other arbitration costs, *Sanchez* concluded that because the plaintiff "does not claim, and no evidence in the record suggests, that the cost of appellate arbitration filing fees were unaffordable for him, such that it would thwart his ability to take an appeal in the limited circumstances where such appeal is available," the provision imposing arbitral appeal fees on the plaintiff was not unconscionable. *Id.* at 921. Only if the agreement "impos[es] arbitral forum fees that are prohibitively high," such that the agreement "effectively blocks every forum for the redress of disputes,

---

[4] Because Section 1284.3 is applicable only in the arbitration context, there is a question whether it would be preempted by the FAA if used to invalidate a fee-shifting clause. We need not reach this issue, however, because we determine that the fee-shifting provision in this case is not unconscionable under existing California law.

including arbitration itself," would the provision be unenforceable. *See id.* (quoting *Sonic II*, 57 Cal. 4th at 1144–45).

Because *Sanchez* supersedes prior state appellate court decisions, we apply its approach in determining whether a provision in a consumer contract that shifts arbitration fees, such as the one here, is unconscionable.[5] We conclude that the arbitration fee-shifting provision in the Terms of Service is not unconscionable. As in *Sanchez*, the plaintiffs here do not claim, and no evidence in the record suggests, that the arbitration fees are unaffordable for them or would thwart their ability to arbitrate this dispute. Under the case-specific standard announced in *Sanchez*, the fee-shifting clause in the Terms of Service is not unconscionable. *Sanchez*, 61 Cal. 4th at 911. We therefore conclude that the plaintiffs here did not carry their burden of demonstrating the substantive unconscionability of the bilateral prevailing party clause.

B

We next turn to the arbitration provision's forum selection clause, which states that final and binding arbitration proceedings will be held in San Francisco, California. Plaintiffs claim that the district court should have concluded this clause was substantively unconscionable

---

[5] Although we previously applied the *Armendariz* rule in the context of a consumer agreement, *Ting*, 319 F.3d at 1135, we are bound by the California Supreme Court's subsequent opinion in *Sanchez*. *See In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002) (holding that our interpretation of a state law issue "was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect," and we are bound to follow the rationale California Supreme Court would likely follow).

because it could potentially require consumers to travel from a faraway city or state for a small potential recovery. Because those costs involved in traveling outweigh any potential remedies, plaintiffs argue, consumers are effectively forced to give up the right to pursue their claim. As evidence, plaintiffs point to affidavits by two of the nine plaintiffs stating that the cost of traveling to San Francisco for arbitration would be burdensome and expensive.

We begin by considering when a forum selection clause is unconscionable under California law. The California Supreme Court recently indicated that its decision in *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 495–96 (1976) (In Bank), exemplifies California's unconscionability doctrine with respect to forum selection clauses. *See Sanchez*, 61 Cal. 4th at 912 (citing *Smith, Valentino*, 17 Cal. 3d at 495–96). *Smith, Valentino* joined the "modern trend which favors enforceability" of forum selection clauses, and concluded "that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." 17 Cal. 3d at 495–96. A clause would be unreasonable if "the forum selected would be unavailable or unable to accomplish substantial justice." *Id.* at 494. In particular, *Smith, Valentino* rejected the plaintiff's arguments that the clause was unenforceable because of the inconvenience and expense of the forum. *Id.* at 496. Because the contract had been "entered into freely and voluntarily by parties who have negotiated at arm's length," *Smith, Valentino* concluded that the parties "reasonably can be held to have contemplated in negotiating their agreement the additional expense and inconvenience attendant on the litigation of their respective claims in a distant forum," and therefore "[m]ere inconvenience or additional expense is not

the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things." *Id.*

Following *Smith, Valentino*, California courts have generally expressed a policy approving forum selection clauses because they "play an important role in both national and international commerce," *Lu v. Dryclean-U.S.A. of California, Inc.*, 11 Cal. App. 4th 1490, 1493 (Cal. Ct. App. 1992), and "provide a degree of certainty, both for business and their customers, that contractual disputes will be resolved in a particular forum," *Net2Phone, Inc. v. Super. Ct.*, 109 Cal. App. 4th 583, 588 (Cal. Ct. App. 2003). "Given the importance of forum selection clauses, both the United States Supreme Court and the California Supreme Court have placed a heavy burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate that enforcement of the clause would be unreasonable under the circumstances of the case." *Lu*, 11 Cal. App. 4th at 1493.

Although *Smith, Valentino* approved a forum selection clause in a negotiated contract, California appellate courts have implemented this broader policy and enforced forum selection clauses in adhesion contracts in a non-arbitration context. In *Intershop Communications v. Superior Court*, the court agreed that an employment contract was a contract of adhesion, but nevertheless held that its forum selection clause, requiring disputes to be litigated in Germany, was enforceable. 104 Cal. App. 4th 191, 201 (Cal. Ct. App. 2002). "A forum selection clause within an adhesion contract will be enforced as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract." *Id.* at 201–02 (internal quotation marks omitted); *see also Olinick v. BMG Entm't*, 138 Cal. App. 4th

1286, 1294 (Cal. Ct. App. 2006) (upholding a forum selection clause in an  employment contract, and stating that "mere inconvenience or additional expense is not the test of unreasonableness of a mandatory forum selection clause" (internal quotation marks omitted)).  California appellate courts considering forum selection clauses in adhesion contracts have held that "[n]either inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability." *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1679 (Cal. Ct. App. 1993); *see also Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 19 (Cal. Ct. App. 2001) (rejecting the argument that a forum selection clause in an adhesion contract was unenforceable because it would have required the members of the putative class to travel out of state to litigate "the relatively nominal individual sums at issue").

In the arbitration context, however, some California appellate courts have not followed *Smith, Valentino* and its progeny, but rather have considered expense and inconvenience caused by a forum selection clause and concluded that these factors made the clause unconscionable. *Aral v. EarthLink, Inc.*, for example, held that a forum selection clause requiring California customers of an internet service provider to arbitrate their claims in Georgia was unreasonable. *See* 134 Cal. App. 4th 544, 561 (Cal. Ct. App. 2005).  The appellate court held that there may be a large number of "consumers who have suffered losses in the range of $40 to $50" but that "to expect any or all of them to travel to Georgia" was "unreasonable as a matter of law." *Id.*  For much the same reasons, *Bolter* held that a forum selection clause requiring "Mom and Pop" franchisees to arbitrate disputes in Utah was unconscionable.  87 Cal. App. 4th at

909; *see also Magno v. Coll. Network, Inc.*, — Cal. Rptr. 3d
—, 2016 WL 3667572, at *6 (Cal. Ct. App. 2016) (same).

To the extent the state appellate courts apply different
standards in arbitration and nonarbitration contexts,
upholding forum selection clauses in the nonarbitration
context (even in adhesion contracts) without considering
expense and inconvenience, while striking them down in the
arbitration context due to expense and inconvenience, these
cases are not binding on us as California law. We reach this
conclusion because *Sanchez* has confirmed that California's
"unconscionability standard is, as it must be, the same for
arbitration and nonarbitration agreements." 61 Cal. 4th at
912; *see also Perry*, 482 U.S. at 492 n.9 ("A court may not
. . . construe [an arbitration] agreement in a manner different
from that in which it otherwise construes nonarbitration
agreements under state law."). In determining whether the
California Supreme Court would adopt the rule in *Smith,
Valentino* or in *Bolter*, we are guided by the fact that *Sanchez*
mentioned *Smith, Valentino* with approval as exemplary of
how to determine unconscionability of forum selection
clauses. *See* 61 Cal. 4th at 912. Further, the rule in *Bolter*
would be grossly overbroad if applied to all contracts: it could
invalidate any forum selection clause in any consumer
contract used by a company to sell moderately priced goods
in more than one state. Such a rule would clearly contravene
California's general policy preference for the enforcement of
forum selection clauses. *See Net2Phone*, 109 Cal. App. 4th
at 588; *Whimsatt v. Beverly Hills Weight Loss Clinics Int'l,
Inc.*, 32 Cal. App. 4th 1511, 1523 (Cal. Ct. App. 1995).[6]

---

[6] Although we followed *Aral* and *Bolter*'s approach to forum selection
clauses in *Nagrampa*, 469 F.3d at 1288–90, we did not have guidance
from *Sanchez* at that time. *Sanchez* has since barred state courts from

Here, plaintiffs have not met their burden of proving that the forum selection clause in the Terms of Service is unreasonable. San Francisco is not "unavailable or unable to accomplish substantial justice." *Smith, Valentino*, 17 Cal. 3d at 494. San Francisco is the principal place of business of 23andMe and so it has a sufficient nexus to the contract. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010). Furthermore, the forum selection clause provided adequate notice that the consumers were agreeing to arbitrate in San Francisco. *See Intershop*, 104 Cal. App. 4th at 201–02. Although plaintiffs submitted two affidavits stating that the cost of traveling to San Francisco for arbitration would be burdensome and expensive, "[m]ere inconvenience or additional expense" does not make the locale unreasonable. *Smith, Valentino*, 17 Cal. 3d at 496 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16–18 (1972)).

Moreover, even if California courts continue to consider expense and inconvenience in their unconscionability analysis in some circumstances, the plaintiffs have not demonstrated that San Francisco will be "so gravely difficult and inconvenient that [the plaintiffs] will for all practical purposes be deprived of [their] day in court," *Aral*, 134 Cal. App. 4th at 561 (quoting *M/S Bremen*, 407 U.S. at 18); *see Nagrampa*, 469 F.3d at 1290 & n.13. The two affidavits submitted by plaintiffs do not provide any detail regarding why the expense of traveling to San Francisco would be too

---

applying an unconscionability doctrine in a different manner in arbitration and nonarbitration contexts. 61 Cal. 4th at 912. Because *Aral* and *Bolter* both adopted an arbitration-specific approach to determining the unconscionability of a forum selection clause, we must reconsider the current state of California law in light of *Sanchez*. *See In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002).

burdensome. Seven of the plaintiffs in this consolidated action reside in California, and, as the district court noted, six of the nine actions in this case were filed in California. All cases were voluntarily transferred to San Jose, California. Accordingly, we conclude that the forum selection clause is not unconscionable.

C

Finally, we consider the arbitration clause's provision exempting "any disputes relating to intellectual property rights, obligations, or any infringement claims" from mandatory arbitration. The plaintiffs argue that this clause is substantively unconscionable because 23andMe is more likely to bring intellectual property claims against its customers than vice versa, and therefore 23andMe has reserved for itself the advantages of a judicial forum while forcing customers to use the arbitral forum. This argument is based on the assumption that an arbitral forum is inferior to a judicial forum for resolving disputes.

Such a theory finds some support in California law. In *Armendariz*, the California Supreme Court held that an arbitration provision in an employment agreement was unconscionably unilateral (and thus unenforceable) because, among other things, it required the employee to arbitrate all wrongful termination claims against the employer but gave the employer a choice of forums for its claims. 24 Cal. 4th at 120. *Armendariz* explained that "[g]iven the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." *Id.* at 117. *Armendariz* emphasized,

however, "that if an employer does have reasonable justification for the arrangement," and the arbitration agreement contained a "modicum of bilaterality," in the context of the "business realities" surrounding the contract's formation, it would not be unconscionable. *Id.* at 117–18.

The California Supreme Court has since clarified *Armendariz*'s reasoning on this issue in several ways. First, the California Supreme Court has backed away from *Armendariz's* assumptions regarding the inferiority of the arbitral forum. Instead, *Sonic II* stated that "California and federal law treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage." 57 Cal. 4th at 1152. This conclusion is consistent with the Supreme Court cases holding that a state court cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable," *Concepcion*, 563 U.S. at 341 (quoting *Perry*, 482 U.S. at 492 n.9), as well as with our decisions, *see Ferguson*, 733 F.3d at 936 (holding that the California Supreme Court's reliance "on the institutional advantages of the judicial forum" as the basis for its rule that claims for public injunctive relief could not be arbitrated was inconsistent with *Concepcion*.), and that of the Tenth Circuit, *see THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1167 (10th Cir. 2014) (holding that the FAA preempts state common law "that is predicated on the view that arbitration is an inferior means of vindicating rights").

Second, the California Supreme Court has confirmed that a one-sided contract is not necessarily unconscionable. "[A] contract can provide for a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need

without being unconscionable." *Baltazar*, 62 Cal. 4th at 1250 (internal quotation marks omitted). Along these lines, *Sanchez* upheld two provisions in a contract between a car buyer and a car dealership that were alleged to be more favorable to the stronger party. *Sanchez*, 61 Cal. 4th at 916. The first provision forbade appeals of an arbitral decision unless it reached a specific dollar threshold. *Sanchez* concluded that this provision was not unconscionable because "the appeal threshold provision does not, on its face, obviously favor the drafting party." *Id.* at 916. The second provision provided that "only arbitral grants of injunctive relief" were subject to a second arbitration. *Id.* at 917. Although acknowledging that "overall the car buyer is more likely than the seller to seek injunctive relief," *Sanchez* held that the one-sided nature of this provision did not render it unconscionable because the extra margin of safety provided by the clause was reasonable given "the broad impact that injunctive relief may have on the car seller's business." *Id.* Similarly, *Baltazar v. Forever 21, Inc.* held that a provision that "compelled arbitration of all employment-related claims, while permitting both parties to seek injunctive relief" in a preliminary court proceeding was not unreasonably unconscionable even if the employer was "practically speaking" more likely to seek the remedy of preliminary injunctive relief. 62 Cal 4th at 1248 & n.4.

Under this precedent, the provision in the Terms of Service in this case excluding intellectual property claims from mandatory arbitration is not unconscionable. As in *Sanchez*, the provision in this case exempting "any disputes relating to intellectual property rights, obligations, or any infringement claims" from mandatory arbitration "does not, on its face, obviously favor the drafting party." 61 Cal. 4th at 916. Under the Terms of Service, customers retained

certain intellectual property rights, including rights in user-generated content and genetic information. The customers would be able to bring claims against 23andMe based on these rights in court. Conversely, the plaintiffs have not identified any intellectual property rights claims that 23andMe are likely to bring against its customers.[7] Even under *Armendariz*, the intellectual property provision has more than a "modicum of bilaterality," *Armendariz*, 24 Cal. 4th at 117. Moreover, to the extent 23andMe has valuable intellectual property rights in its website and database, it is entitled to an extra "margin of safety" based on legitimate business needs, *Baltazar*, 62 Cal. 4th at 1250. We therefore conclude plaintiffs have not carried their burden of demonstrating that the intellectual property exemption is unconscionable under current California law.

---

[7] In oral argument, the plaintiffs asserted that 23andMe is building a database of genetic information based on its customers' DNA results and that 23andMe might resort to copyright law to prevent customers from publishing the DNA data of other customers. (Customers are allowed to publish their own data under the agreement.) There is no support in the record for this assertion, and it appears to be purely speculative. Therefore, it does not support the plaintiffs' argument that 23andMe is more likely to bring intellectual property claims then consumers.

## D

Plaintiffs also challenge a provision in the Terms of Service establishing a one-year statute of limitations period,[8] and a provision giving 23andMe a unilateral right to modify the agreement.[9] These provisions are not contained within the arbitration clause itself.

Because § 2 of the FAA states that an agreement to arbitrate is "valid, irrevocable, and enforceable," and does not address "the validity of the contract in which it is contained," the United States Supreme Court has held that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, W., Inc. v.*

---

[8] Section 28(d) states:

> Term for cause of actions. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Services or the TOS must be filed within one (1) year after such claim or cause of action arose or be forever barred.

[9] Paragraph 26, entitled "Changes to the Terms of Service" states:

> 23andMe may make changes to the TOS [terms of service] from time to time. When these changes are made, 23andMe will make a new copy of the TOS available on its website and any new additional terms will be made available to you from within, or through, the affected services.
>
> You acknowledge and agree that if you use the Services after the date on which the TOS have changed, 23andMe will treat your use as acceptance of the updated TOS.

*Jackson*, 561 U.S. 63, 70–71 (2010). In other words, if the plaintiff does not specifically and directly challenge the "precise agreement to arbitrate at issue," *id.* at 71, a court must treat the arbitration agreement as valid under § 2 and enforce it, thereby letting the arbitrator decide questions as to the validity of other provisions in the first instance, *id.* at 72. This rule applies even when the plaintiff challenges the contract on "a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). Given this precedent, our authority to review portions of the contract outside the arbitration provision is limited. But as *Rent-A-Center* indicates, "[i]t may be that" where a plaintiff challenges "the validity under § 2 of the precise agreement to arbitrate at issue" on the ground that certain general contract provisions "*as applied*" to the agreement to arbitrate render it unconscionable, such a "challenge should [be] considered by the court." 561 U.S. at 71, 74 (emphasis in original). *Cf. Nagrampa*, 69 F.3d at 1276 (holding a court's determination whether an arbitration agreement is *procedurally* unconscionable may be informed by consideration of the contract as a whole).

Turning first to the one-year statute of limitations, we conclude that it does not make the arbitration provision itself unconscionable under California law. The leading California case on this issue is *Moreno v. Sanchez*, 106 Cal. App. 4th 1415 (Cal. Ct. App. 2003), which was cited by the California Supreme Court in *Sanchez v. Valencia* as exemplifying the application of California's unconscionability doctrine to statute of limitations clauses. 61 Cal. 4th at 912. *Moreno* explained that California courts "have afforded contracting

parties considerable freedom to modify the length of a statute of limitations." *Id.* 1434; *see also Han v. Mobile Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) ("A contractual limitation period requiring a plaintiff to commence an action within 12 months following the event giving rise to a claim is a reasonable limitation which generally manifests no undue advantage and no unfairness."). Moreover, California courts generally interpret contractual statute of limitations as incorporating California's discovery rule, in order to avoid unfair or unreasonable applications of the limitations period. *Moreno*, 106 Cal. App. 4th at 1430. Nor is the statute of limitations in the Terms of Service in this case unfairly one-sided; the provision by its terms, applies to claims brought by both parties. *Compare Pokorny*, 601 F.3d at 1001 (holding that a *unilateral* clause shortening the limitations period added to the unconscionability of the contract). Accordingly, the statute of limitations provision does not make the arbitration provision unconscionable.

Likewise, under the circumstances here, the unilateral modification clause does not make the arbitration provision itself unconscionable. California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable. *See, e.g.*, *Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 1233, 1237 (Cal. Ct. App. 2014); *see also, e.g.*, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 965–66 (Cal. Ct. App. 2015). Although we have held that a unilateral modification provision itself may be unconscionable, s*ee Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), we have not held that such an unconscionable provision makes the arbitration provision or the contract as a whole unenforceable. *Id.* at

1179 n.23.  We conclude that plaintiffs have not carried their burden of demonstrating that the unilateral modification provision renders the arbitration clause, set forth in a separate provision, unconscionable.  While plaintiffs are free to argue during arbitration that the unilateral modification clause itself is unenforceable, we do not reach this claim here.  *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 n.9 (9th Cir. 2013) (en banc).

IV

We conclude that under principles established by recent California Supreme Court decisions, California's common law rule of unconscionability does not provide a basis to revoke the arbitration agreement in the Terms of Service here. Accordingly, the arbitration agreement is "valid, irrevocable, and enforceable."  9 U.S.C. § 2.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring in the judgment:

I agree with the majority that the arbitration provision is valid and enforceable, albeit for different reasons.  Like the district court, I see no need to address whether the fee-shifting clause is substantively unconscionable because 23andMe has waived its right to enforce that clause—a clause that would have been severable in any event.  As for the venue-selection clause, it cannot be deemed substantively unconscionable as to these plaintiffs.  Three of the class actions involved in this appeal were filed in the District Court for the Northern District of California, and the plaintiffs in

each of the other class actions voluntarily transferred their actions to that court. So, provided the cases can proceed on a class-action basis, it seems obvious that litigating in an arbitral forum in San Francisco will not pose any undue hardship for the plaintiffs. At oral argument, 23andMe conceded that these cases may proceed as class arbitrations (the arbitration provision does not contain a class-action waiver), and the rules of the arbitration provider designated by the parties specifically provide for class arbitration. Finally, the arbitration provision's carve-out for intellectual property claims is not so one-sided as to be substantively unconscionable. The plaintiffs have not shown that intellectual property claims represent the claims that 23andMe would be most likely to assert against consumers and that consumers would be least likely to assert against 23andMe.

I would not address the remaining two clauses—the 1-year limitations period and the unilateral modification clause—because the plaintiffs have challenged those two clauses only insofar as they aggravate the supposed substantive unconscionability of the other three clauses.