**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 19 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DONEYDA PEREZ, as an individual and on behalf of all others similarly situated, | No. 17-55764 |
| Plaintiff-Appellee, | D.C. No. 8:16-cv-01440-JLS-DFM |
| v. | |
| DIRECTV, LLC, a Delaware Corporation, | MEMORANDUM* |
| Defendant-Appellant, | |
| and | |
| LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; et al., | |
| Defendants. | |

| | |
|---|---|
| DONEYDA PEREZ, as an individual and on behalf of all others similarly situated, | No. 17-55775 |
| Plaintiff-Appellee, | D.C. No. 8:16-cv-01440-JLS-DFM |
| v. | |
| DIRECTV, LLC, a Delaware Corporation, | |
| Defendant, | |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and

LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation and JULIE COHEN LONSTEIN,

Defendants-Appellants.

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted October 11, 2018
Pasadena, California

Before: WATFORD and OWENS, Circuit Judges, and PRESNELL,[**] District Judge.

DirecTV appeals from the district court's order denying DirecTV's motion to compel arbitration. We review de novo the district court's determinations about the arbitrability of claims. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1021 (9th Cir. 2016). We review the underlying factual findings for clear error and the interpretation of contract provisions de novo. *Id*. As the parties are familiar with the facts, we do not recount them here. We affirm.

Assuming without deciding that the parties entered into a valid contract, the district court did not err in holding that Appellee Doneyda Perez's claims are outside the scope of the arbitration agreement. Section 9(d)(ii) of DirecTV's

---

[**] The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

2

Customer Agreement exempts from the arbitration agreement "any dispute involving a violation of the Communications Act of 1934 . . . or any statement or law governing theft of service." Both of these exemptions unambiguously cover Perez's claims. First, Perez's claims involve a violation of the Communications Act because her complaint expressly alleges that part of DirecTV's scheme against small minority-owned businesses involved threatening customers with lawsuits for violating the Communications Act. Second, Perez's claims involve statements or law governing theft of service because her complaint alleges that DirecTV accused her of theft of satellite cable television services and pressured her into a settlement.

Because we conclude that Perez's claims are outside the scope of the arbitration agreement, we do not reach the issues of whether sections 1(h) and 9(d) of the Customer Agreement are unconscionable, or whether the Lonstein Appellants may enforce DirecTV's arbitration agreement against Perez.

**AFFIRMED**.

*Perez v. DirecTV, LLC*, Nos. 17-55764, 17-55775

WATFORD, Circuit Judge, dissenting:

I dissent, but I do so with great reluctance. The conduct DirecTV is accused of engaging in here is deplorable. According to the allegations in Ms. Perez's complaint, a DirecTV salesman walked into her beauty salon and offered her a great promotional deal if she signed up for DirecTV service for her business. The salesman persuaded her to have the service hooked up that same day, and he could see that the programming would be shown in Ms. Perez's beauty salon, viewable by her customers. But unbeknownst to Ms. Perez, DirecTV classified her account as a residential account. Under the terms of service for a residential account, DirecTV programming may not be shown in commercial establishments, such as Ms. Perez's beauty salon.

For nearly two years, Ms. Perez remained a customer of DirecTV. During that time, DirecTV never indicated that she might be misusing its services. The first time Ms. Perez learned that there might be a problem was when she received a call from DirecTV's lawyer. The lawyer accused her of violating DirecTV's terms of service and the federal Communications Act by displaying DirecTV programming in her beauty salon without authorization. The lawyer declared that Ms. Perez owed DirecTV $75,000 in penalties and threatened to sue her in federal court if she refused to pay. After a month of increasingly harassing calls, the

lawyer offered to settle the matter with Ms. Perez if she agreed to pay $5,000. Fearing the prospect of a federal lawsuit, and without the benefit of legal counsel of her own, Ms. Perez accepted the settlement offer.

When Ms. Perez decided to file this class-action lawsuit to seek redress for this extortionate behavior, DirecTV invoked the arbitration provision in its customer agreement to keep the dispute out of court. Conveniently, DirecTV's arbitration provision includes an exception that leaves the company free to sue Ms. Perez in court for any "theft of service" claims it might have against her. But it requires Ms. Perez to arbitrate on an individual basis virtually any claim she might have against DirecTV. As DirecTV well knows, precluding customers like Ms. Perez from pursuing relief on a class-wide basis means that few will seek redress for the kind of wrongdoing alleged here. It's simply too expensive for an individual consumer to hire a lawyer in such a dispute, even when the dispute will be resolved through the streamlined process of arbitration.

This heads-I-win, tails-you-lose arbitration regime strikes me as the height of unfairness. I nonetheless feel compelled to dissent because, in my view, current law allows DirecTV to enforce its arbitration provision against Ms. Perez. First, a valid arbitration agreement exists in this case. Ms. Perez signed a document stating in plain terms that she agreed to arbitrate all disputes with DirecTV in accordance with the terms of the separate customer agreement available on

DirecTV's website. *See Shaw v. Regents of University of California*, 67 Cal. Rptr. 2d 850, 855–56 (Ct. App. 1997). Second, Ms. Perez's claims are covered by the arbitration agreement. Although the scope of the exception for any dispute "involving" a violation of the Communications Act or theft-of-service prohibitions is ambiguous, and admittedly allows for the broad reading my colleagues have adopted, ambiguities of this sort must be resolved in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983); *Erickson v. Aetna Health Plans of California, Inc.*, 84 Cal. Rptr. 2d 76, 81–84 (Ct. App. 1999). Finally, even though the arbitration provision is unfairly one-sided—it allows the claims DirecTV is likely to bring against its customers to be resolved in court, while requiring the claims DirecTV's customers are likely to bring against the company to be resolved through arbitration—that feature does not render the provision invalid. California law dictates that the one-sided aspect of the provision may be severed, leaving the underlying agreement to arbitrate enforceable. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272–74 (9th Cir. 2017).

I take no pleasure in voting to reverse the denial of DirecTV's motion to compel arbitration. But in my view the confluence of California contract law and Federal Arbitration Act jurisprudence compels that unfortunate result.