**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LORRIE POUBLON, an individual, on behalf of herself, and on behalf of all persons similarly situated, *Plaintiff-Appellee*, <br><br> v. <br><br> C.H. ROBINSON COMPANY; C.H. ROBINSON WORLDWIDE, INC., *Defendants-Appellants*. | No. 15-55143 <br><br> D.C. No. 2:12-cv-06654-CAS-MAN <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted December 9, 2016
Pasadena, California

Filed February 3, 2017

Before: Consuelo M. Callahan, Carlos T. Bea,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

# SUMMARY[*]

### Arbitration

The panel reversed the district court's order denying defendants' motion to stay proceedings, compel arbitration of claims arising out of the plaintiff's employment, and dismiss class and representative claims.

The panel reversed the district court's holding that the dispute resolution provision in an Incentive Bonus Agreement signed by the plaintiff was both procedurally and substantively unconscionable under California law. The panel concluded that, even though the Incentive Bonus Agreement was an adhesion contract, there was a low degree of procedural unconscionability. As to substantive unconscionability, the defendants did not contest the district court's holding that a judicial carve-out provision was substantively unconscionable. The panel held that a waiver of representative claims was not substantively unconscionable even though the waiver of the plaintiff's claim under California's Private Attorneys General Act was not enforceable under California law. A venue provision, a confidentiality provision, a sanctions provision, a unilateral modification provision, and limitations on discovery also were not substantively unconscionable.

The panel concluded that the dispute resolution provision was valid and enforceable once the judicial carve-out was extirpated and the waiver of representative claims was

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

limited to non-PAGA claims. The panel remanded the case to the district court.

---

**COUNSEL**

Jack S. Sholkoff (argued), Christopher W. Decker, and Kathleen J. Choi, Ogletree Deakins Nash Smoak & Stewart P.C., Los Angeles, California, for Defendants-Appellants.

Kyle R. Nordrehaug (argued) and Norman B. Blumenthal, Blumenthal Nordrehaug & Bhowmik, La Jolla, California, for Plaintiff-Appellee.

---

**OPINION**

IKUTA, Circuit Judge:

Plaintiff Lorrie Poublon entered into an agreement with defendants C.H. Robinson Co. and C.H. Robinson Worldwide, Inc. (collectively, "C.H. Robinson") to arbitrate claims arising out of her employment. In the present action, the district court denied C.H. Robinson's motion to stay, compel arbitration, and dismiss class and representative claims, concluding that the dispute resolution provision was unconscionable. We hold that the dispute resolution provision is not tainted with illegality and any invalid portions can be severed, and therefore reverse.

I

Poublon began working for C.H. Robinson on May 7, 2007, as an Account Manager in Los Angeles, California.

While employed at C.H. Robinson, Poublon signed an agreement titled "Incentive Bonus Agreement" each December in order to receive a financial bonus. The Incentive Bonus Agreement was a short one-page document with eight provisions. The seventh provision, which had the heading "Dispute Resolution," contained four separate paragraphs. The first paragraph stated:

> You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) the arbitration need not actually be administered by the American Arbitration Association; (2) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company intranet; (3) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of the Federal Rules of Civil Procedure; (4) except on a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side; and (5) except as

mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis. In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

The second paragraph stated, in pertinent part:

This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information,

trademarks, copyrights, patents, or other intellectual property.

The fourth paragraph provided:

If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.

In December 2011, as in prior years, Poublon met with her supervisor, Gerry Nelson, to discuss her compensation and bonuses for the following year. At this meeting, Nelson gave Poublon the Incentive Bonus Agreement to take home and review. He told her that the agreement would have to be signed and returned within a specified time period in order for her to receive her bonus. Poublon and Nelson did not discuss the dispute resolution provision. Poublon later asked Nelson "what would happen if [she] did not sign the document," and he responded that "failure to sign would result in [Poublon] not being paid [her] bonus." On December 23, 2011, Poublon signed the Incentive Bonus Agreement and returned it to C.H. Robinson. Poublon's employment at C.H. Robinson ended in February 2012.

In March 2012, Poublon alleged that C.H. Robinson had misclassified her as exempt from overtime pay requirements and demanded mediation of her claims pursuant to the terms of the Incentive Bonus Agreement that she had signed in 2011. After mediation was unsuccessful, Poublon filed a

class action complaint against C.H. Robinson in Los Angeles County Superior Court, making the same misclassification claims on behalf of herself and other employees.

In August 2012, C.H. Robinson removed Poublon's action to a federal district court. Poublon filed a First Amended Complaint, which added a claim on behalf of California under the Private Attorneys General Act (PAGA), Cal. Labor Code §§ 2698–2699.5. The district court denied C.H. Robinson's motion to compel arbitration, holding that the dispute resolution provision was both procedurally and substantively unconscionable, and therefore unenforceable. C.H. Robinson timely appealed.

II

A

We have jurisdiction under 9 U.S.C. § 16(a)(1). We review the denial of a motion to compel arbitration de novo. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009 (9th Cir. 2005). We review factual findings for clear error, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009), and review "[t]he interpretation and meaning of contract provisions" de novo, *Lee v. Intelius Inc.*, 737 F.3d 1254, 1258 (9th Cir. 2013).

B

The Federal Arbitration Act (FAA) requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citation omitted). Section 2 of the FAA makes

agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1] The final clause of § 2, generally referred to as the savings clause, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

Section 2 of the FAA preempts state statutes and state common law principles that "undercut the enforceability of arbitration agreements," unless the savings clause applies. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984); *see also Concepcion*, 563 U.S. at 343–44; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015). In other words, a court cannot enforce state laws that apply to

---

[1] 9 U.S.C. § 2 states, in full:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

agreements to arbitrate but not to contracts more generally. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) ("Any general state-law contract defense . . . that has a disproportionate effect on arbitration is displaced by the FAA.").

Here, Poublon argues that the dispute resolution provision in the Incentive Bonus Agreement is unenforceable under California's unconscionability doctrine. As the California Supreme Court has noted, California's "unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015). Recent California Supreme Court cases have demonstrated how this principle applies to California's unconscionability doctrine. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016); *Sanchez*, 61 Cal. 4th at 911; *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1143–45 (2013) (*Sonic II*). In our evaluation of Poublon's claim, we apply principles derived from these cases, as well as other precedent articulating California's general unconscionability standard. *See Tompkins*, 840 F.3d at 1024 (holding that "we are bound by the California Supreme Court's most recent articulation of its [general unconscionability] standard").

Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable. *Sanchez*, 61 Cal. 4th at 910. Procedural and substantive unconscionability "need not be

present in the same degree." *Id.* Rather, there is a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). We therefore must consider both procedural and substantive unconscionability.

The procedural element of unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle*, 55 Cal. 4th at 246. "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347–48, *as modified on denial of reh'g* (Feb. 9, 2015). California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the "totality of the circumstances surrounding the negotiation and formation of the contract" that it was oppressive. *Id.* at 1348.

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961)). While California courts have found that "the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability" in a range of circumstances, *Sanchez*, 61 Cal. 4th at 915, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable, *see*

*id.* at 914–15; *see also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("Although adhesion contracts often are procedurally oppressive, this is not always the case."). In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but "there is no other indication of oppression or surprise,"[2] then "the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704, *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013) (internal quotation marks omitted); *see also Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012).

California courts have articulated numerous standards for determining substantive unconscionability. Courts have held that the agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable," or must "shock the conscience." *Sanchez*, 61 Cal. 4th at 911 (emphasis omitted). "[T]hese formulations, used throughout [California] case law, all mean the same thing." *Id.* The "central idea" is that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Baltazar*, 62 Cal. 4th at 1244 (internal quotation marks and citations omitted). "Not all one-sided contract provisions are unconscionable." *Sanchez*, 61 Cal. 4th at 911.

---

**[2]** For purposes of determining procedural unconscionability, the California Supreme Court has held that "surprise or other sharp practices" may arise when a party with less bargaining power is not told about an unusual provision, or the party is otherwise "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *Baltazar*, 62 Cal. 4th at 1245.

III

We now apply these standards to Poublon's claim that the dispute resolution provision in the Incentive Bonus Agreement is procedurally unconscionable to a high degree and contains eight substantively unconscionable provisions.

A

We begin with the issue of procedural unconscionability. C.H. Robinson concedes that the Incentive Bonus Agreement meets California's definition of an adhesion contract, because there was unequal bargaining power between the employer and employee, and the agreement was presented to Poublon on a take-it-or-leave-it basis. Under California law, "[t]he adhesive nature of the employment contract requires us to be 'particularly attuned' to [a former employee's] claim of unconscionability." *Baltazar*, 62 Cal. 4th at 1245. Nevertheless, the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most. *See id.* (stating that the court does not subject a typical employment contract or other adhesion contract "to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices'" (quoting *Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007))); *see also Serpa*, 215 Cal. App. 4th at 704; *Ajamian*, 203 Cal. App. 4th at 796. We therefore turn to the question whether there are other indications of oppression or surprise that would lead California courts to conclude that the degree of procedural unconscionability is high.

Poublon raises two arguments on this point. First, Poublon argues that the dispute resolution provision was oppressive because C.H. Robinson failed to provide her with

a copy of the American Arbitration Association's rules or C.H. Robinson's Employment Dispute Mediation/Arbitration Procedure (the "Arbitration Procedure"), which were incorporated by reference in the dispute resolution provision. We disagree. *Baltazar* rejected an employee's claim that the employer's failure to provide a copy of the American Arbitration Association's rules, which were incorporated by reference in the arbitration agreement, gave rise to a "greater degree of procedural unconscionability." 62 Cal. 4th at 1246. While "courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement," incorporation by reference, without more, does not affect the finding of procedural unconscionability. *Id.* (quoting *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)). *Baltazar*'s holding is consistent with California's general rule that "parties may validly incorporate by reference into their contract the terms of another document" provided certain conditions are met. *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (quoting *Baker v. Aubry*, 216 Cal. App. 3d 1259, 1264 (1989)); *see also Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 692 (2014) ("Like any other contract, an arbitration agreement may incorporate other documents by reference."). Accordingly, while we may "more closely scrutinize the substantive unconscionability" of terms appearing only in the American Arbitration Association's rules or C.H. Robinson's Arbitration Procedure, *Baltazar*, 62 Cal. 4th at 1246, the incorporation of these documents by reference does not support Poublon's claim that the dispute resolution provision was oppressive.

Second, Poublon states that the dispute resolution provision was oppressive because she believed signing the agreement was necessary not only to receive bonuses, but also to remain employed. This argument fails, because there is no evidence in the record that C.H. Robinson ever stated or suggested that Poublon would be fired for failing to sign the agreement. To the contrary, the record shows that in response to Poublon's question regarding what would happen if she did not sign the agreement, Nelson responded only that she would not receive her bonus. Poublon points to a statement in the Incentive Bonus Agreement that provides: "In consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree as follows." But this boilerplate merely establishes there is consideration for the agreement; it does not state that failure to sign the agreement will result in termination from employment. By contrast, when the Incentive Bonus Agreement expressly addresses termination, it states only that "[e]mployment with the Company is 'at-will'" and the employee or the Company can terminate the employment at any time. Poublon's unsupported belief that she might be terminated if she failed to sign the agreement does not provide a basis for her claim that the dispute resolution provision was oppressive. *Cf. Ayoob v. Ayoob*, 74 Cal. App. 2d 236, 250 (1946) (holding that a "self-serving declaration" was "without sufficient probative value . . . to establish the intent of the appellant or the truth of a fact declared"). Moreover, this argument would fail even if Poublon presented evidence that signing the Incentive Bonus Agreement were a condition of her employment. Poublon has not established any other element of oppression or surprise associated with the employment agreement, and therefore under California law, "the degree of procedural unconscionability of [such] an adhesion agreement

is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa*, 215 Cal. App. 4th at 704 (internal quotation marks omitted); *see also Baltazar*, 62 Cal. 4th at 1245; *Ajamian*, 203 Cal. App. 4th at 796.

B

We now turn to Poublon's argument that eight provisions in the Incentive Bonus Agreement are substantively unconscionable. We first consider the language in the dispute resolution provision itself, and then turn to the language in the Arbitration Procedure, which is incorporated in the dispute resolution provision by reference.

1

*The Judicial Carve-Out Provision.* The dispute resolution provision requires employees to submit all claims against C.H. Robinson to arbitration, but preserves C.H. Robinson's right to seek judicial resolution of "any claims by the Company that include a request for injunctive or equitable relief, including," certain restrictive covenants and intellectual property rights. The district court held that the judicial resolution carve-out was substantively unconscionable. On appeal, C.H. Robinson does not contest the district court's holding that the carve-out for equitable or injunctive relief was substantively unconscionable. Accordingly, any argument that the judicial carve-out was not substantively unconscionable has been waived. *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996).

2

*Waiver of Representative Claims.* The dispute resolution provision states that "except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis." The parties do not dispute that this provision denies Poublon the right to bring her representative PAGA claim, and we agree. In *Iskanian v. CLS Transportation Los Angeles, LLC*, the California Supreme Court held that where "an employment agreement compels the waiver of representative claims," whether or not the agreement specifically references PAGA, it "frustrates the PAGA's objectives" and "is contrary to public policy and unenforceable as a matter of state law." 59 Cal. 4th 348, 384 (2014). This holding is not preempted by the FAA and is the controlling rule of California contract law. *Sakkab*, 803 F.3d at 439.

Poublon argues that because the waiver of a representative PAGA claim is unenforceable, it is also substantively unconscionable. This is incorrect. Under California law, "[c]ontracts can be contrary to public policy but not unconscionable and vice versa." *Sonic-Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686–87, *cert. granted, judgment vacated on other grounds*, 132 S. Ct. 496 (2011) (*Sonic I*) (internal citations omitted); *see also Securitas Sec. Servs. USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109, 1123 (2015) (holding that the determination "whether an agreement has been validly formed, and whether its terms are adhesive or unconscionable . . . are different from the determination of whether [the employee] entered into a knowing and intelligent waiver of her right to bring a PAGA

claim . . . or whether *Iskanian* compels a conclusion that such a waiver is unenforceable as against public policy"). We are not aware of a California case holding that a PAGA waiver is substantively unconscionable. Nor has Poublon directed us to a case holding that the waiver of a representative claim, other than a PAGA claim, is substantively unconscionable.

By contrast, the Supreme Court has suggested that arbitration agreements can generally waive collective, class-wide, and representative claims. In *Concepcion*, an arbitration agreement "required that claims be brought in the parties' 'individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.'" 563 U.S. at 336. Because the California Supreme Court had developed a rule that such provisions were unconscionable, we denied a company's motion to compel arbitration. *Id.* at 338. The Supreme Court reversed, holding that this state court rule was preempted by the FAA, because "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," and "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 344. Accordingly, even if the parties cannot lawfully agree to waive a PAGA representative action, *Concepcion* weighs sharply against holding that the waiver of other representative, collective or class action claims, as provided in the dispute resolution provision, is unconscionable. Therefore, the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable.

3

*The Venue Provision.*    Section II(f) of the Arbitration Procedure, "Venue and Place of Hearing," provides:

> The venue of any Dispute shall be Hennepin County, MN.    Unless the Parties otherwise agree or the Arbitrator otherwise directs for good reason, any hearing shall be conducted and deemed held in that county of venue, at a place convenient to the Parties as so designated by the Arbitrator.

Relying on cases decided prior to *Sanchez*, Poublon claims that this venue provision is substantively unconscionable because it requires her to litigate her California claims in Minnesota, a thousand miles away from her home in California.    We have previously rejected this argument.    *See Tompkins*, 840 F.3d at 1027.    As we explained, the California Supreme Court has stated that California courts must enforce a forum selection clause unless the clause is unreasonable because "the forum selected would be unavailable or unable to accomplish substantial justice"; inconvenience and expense of the forum alone is not sufficient.    *Id.* (quoting *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 494 (1976) (in bank)).

As in *Tompkins*, Poublon has not met the burden of proving that the forum selection clause in the Arbitration Procedure is unreasonable.    For one, even if the venue provision required arbitration to take place in Hennepin County, Minnesota, the forum is not "unavailable or unable to accomplish substantial justice."    *See id*.    Moreover, Poublon's interpretation of this venue provision is wrong: on

its face, the provision does not require a Minnesota venue, but allows the parties to agree on a different venue, and allows the arbitrator to select a different venue "for good reason." An arbitrator would have good reason to change the venue if Poublon could demonstrate that Minnesota would be "so gravely difficult and inconvenient that [the plaintiffs] will for all practical purposes be deprived of [their] day in court." *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 561 (2005) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). When determining the validity of an arbitration procedure, "[w]e assume that the arbitrator will operate in a reasonable manner in conformity with the law." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010). Accordingly, we conclude that this venue provision in the Arbitration Procedure is not substantively unconscionable.

4

*The Confidentiality Provision.* Section II(h) of the Arbitration Procedure, "Confidentiality," provides:

> All aspects of the arbitration, including without limitation, the record of the proceeding, are confidential and shall not be open to the public, except (a) to the extent both Parties agree otherwise in writing, (b) as may be appropriate in any subsequent proceedings between the Parties, or (c) as may otherwise be appropriate in response to a governmental agency or legal process, provided that the Party upon whom such process is served shall give immediate notice of such process to the other Party and afford

the other Party an appropriate opportunity to
object to such process.

Poublon claims that this provision is substantively
unconscionable because keeping the arbitration proceedings
secret under threat of a sanction order by the arbitrator
unfairly favors employers. In making this argument, Poublon
relies on our decision in *Pokorny v. Quixtar, Inc.*, which held
that a confidentiality requirement in the arbitration agreement
is substantively unconscionable when it (1) allows defendants
to learn as "repeat player[s]" in the arbitration process, while
preventing employees from learning from similar prior cases,
or (2) prevents plaintiffs from investigating or engaging in
discovery by limiting contact with other employees. 601 F.3d
987, 1001–03 (9th Cir. 2010).[3]

This argument fails. Several years after *Pokorny* was
decided, the California Court of Appeal considered a trial
court's denial of an employer's motion to compel arbitration.
*Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal.

---

[3] The confidentiality provision in *Pokorny* prevented distributors from
disclosing "to any other person not directly involved in the conciliation or
arbitration process (a) the substance of, or basis for, the claim; (b) the
content of any testimony or other evidence presented at an arbitration
hearing or obtained through discovery; or (c) the terms [or] amount of any
arbitration award." 601 F.3d at 1001. This provision took effect as soon
as the distributor became "aware of a potential Rule violation or of a claim
against" another distributor or against Quixtar, the defendant company.
*Id.* We interpreted this provision as barring distributors from disclosing
their claim and "the evidence supporting it." *Id.* Quixtar, on the other
hand, could "mak[e] such disclosures up until the time [a distributor]
formally demands arbitration," and could "avoid the confidentiality
requirement altogether when it brings its own claims against [a distributor]
because it is not required to first assert those claims using the Quixtar
ADR process." *Id.*

App. 4th 398 (2014), *review denied* (June 11, 2014). The employee opposed the motion, on the ground that the arbitration agreement was unconscionable. *Id.* at 401. Among the allegedly unconscionable provisions was a confidentiality provision requiring "that the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public unless the parties agree otherwise, or as appropriate in any subsequent proceeding between the parties, or as otherwise may be appropriate in response to governmental or legal process." *Id.* at 408. The trial court held that this provision, along with others in the agreement, unreasonably favored the employer because "they inhibit employees from discovering evidence from each other" while "[n]o such restrictions are applied in a court action." *Id.* The California Court of Appeal rejected this reasoning, holding that there is nothing unreasonable or prejudicial about "a secrecy provision with respect to the parties themselves," and the provision requiring confidentiality was not unconscionable. *Id.* (quoting *Woodside Homes of Cal., Inc. v. Superior Court*, 107 Cal. App. 4th 723, 732 (2003)).

This holding is directly on point. The confidentiality provisions in both the Arbitration Procedure at issue here and in *CarMax* are substantially identical: they both require that the arbitration, including the record of the proceeding, be confidential, and they both include the same enumerated exceptions. *See id*. Moreover, the California Court of Appeal rejected the same policy argument that Poublon makes here, namely that such confidentiality provisions "inhibit employees from discovering evidence from each other." *See id.*

In the absence of any decision on this issue from the California Supreme Court, we are bound by *CarMax*, as the ruling of the highest state court issued to date. While the state's Supreme Court is "the final arbiter of what is state law," there are "many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." *West v. Am Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)*.* "A state appellate court's announcement of a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1036 n.5 (9th Cir. 1994), *as amended* (Dec. 27, 1994) (quoting *Hicks v. Feiock*, 485 U.S. 624, 630 (1988)) (internal quotation marks omitted). Federal courts are required to "ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts." *Am Tel. & Tel. Co.*, 311 U.S. at 237. This approach is consistent with the longstanding principle that state law should be applied consistently in federal and state courts, a goal that "would be thwarted if the federal courts were free to choose their own rules of decision whenever the highest court of the state has not spoken." *Id.* at 236.

Here, there is no "persuasive data," *Miller*, 39 F.3d at 1036 n.5, that the California Supreme Court would reach a different conclusion than *CarMax*, and the fact that the California Supreme Court declined to review *CarMax* supports this conclusion. *See Tenneco W., Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985) (noting the

importance of relying on a state appellate court's ruling is heightened when "the highest court has refused to review the lower court's decision" (quoting *Am Tel & Tel. Co.*, 311 U.S. at 236)).  Poublon does not cite any California case reaching a different conclusion than *CarMax*.

Moreover, our prior decisions on this issue did not rely on any California law.  Rather, in holding that a confidentiality provision was substantively unconscionable, *Pokorny* relied only on our decisions in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), and *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).  *Davis*, in turn, relied on *Ting* and a decision of the Washington Supreme Court, *see Davis*, 485 F.3d at 1078–79 (citing *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 313 (2004) (en banc)), while *Ting*, relied solely on a D.C. Circuit decision, 319 F.3d at 1151–52 (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997)).  Now that we have available data establishing "what the state law is" regarding a closely similar confidentiality provision, we are bound to apply it, even though "the state rule may have departed from prior decisions of the federal courts." *Am Tel & Tel. Co.*, 311 U.S. at 237.[4] Accordingly, the confidentiality provision in the Arbitration Procedure is not substantively unconscionable.

---

[4] Even if *Pokorny* and related cases remained relevant to our analysis of California law, the policy concerns that drove these decisions are not applicable in this case.  First, where the number of putative class members is smaller than the thousands in *Davis* and the millions in *Ting*, the "repeat player" concerns are mitigated.  *See Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1059 n.9 (9th Cir. 2013) (en banc).  Poublon's suit involves around 250 class members.  Second, the scope of the confidentiality provision in the dispute resolution provision is narrower than in our prior cases, which mitigates *Pokorny*'s concern that plaintiffs will be limited in their ability to share information.

5

*Sanctions Provision.*   Section II(p) of the Arbitration Procedure, "Sanctions," states:

> The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the claim or counterclaim was frivolous or brought to harass the Employee, the Company or the Company's personnel.
>
> The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the other Party (a) engaged in unreasonable delay, (b) failed to cooperate in discovery, or (c) failed to comply with requirements of confidentiality.

Under California law, "[i]n the context of mandatory employment arbitration of unwaivable statutory rights, . . . arbitration agreements 'cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.'" *Sanchez*, 61 Cal. 4th at 918 (quoting *Armendariz*, 24 Cal. 4th at 110–11).

Poublon argues that the sanctions provision violates this rule and is substantively unconscionable for two reasons. First, she argues that the provision permits an award of attorneys' fees in favor of the employer even though under

section 1194 of the California Labor Code, only the employee is entitled to attorneys' fees when prevailing on a misclassification claim.[5] Second, she argues that the provision violates California law because it gives the arbitrator the option to award attorneys' fees to the prevailing employee, while section 1194 gives the prevailing employee an absolute right to recover attorneys' fees.

We disagree with both arguments. First, Poublon misconstrues the sanctions provision as authorizing the arbitrator to award attorneys' fees to the prevailing party in the arbitration. On its face, it does not give the arbitrator such power. Rather, the provision authorizes the arbitrator to award attorneys' fees against a party that brought a frivolous or harassing claim, or in the course of the proceeding, engaged in unreasonable delay, failed to cooperate in discovery, or violated confidentiality requirements. In other words, the clause provides for the imposition of attorneys' fees as a sanction for bad behavior. As such, it is consistent with sections 128.7 and 2023.030(a) of the California Code of Civil Procedure, which authorize courts to impose similar sanctions in judicial proceedings. Indeed, Poublon has not identified a circumstance in which the sanctions available

---

[5] California Labor Code section 1194(a) provides:

> (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

under the Arbitration Procedure would not be available in a judicial proceeding.**⁶**

Second, because the sanctions provision is silent on whether an arbitrator can award attorneys' fees to a prevailing employee, it is not inconsistent with section 1194 of the California Labor Code. Rather, the Arbitration Procedure requires the arbitrator to comply with applicable California law, which would include section 1194 to the extent applicable. *See* Section II(j), "Applicable Law and Burden of Persuasion," ("The principles of applicable substantive common, decisional and statutory law shall control the disposition of each Dispute."). Accordingly, the sanctions provision is not substantively unconscionable.

6

*Unilateral Modification*. Poublon argues that the dispute resolution provision is substantively unconscionable because it unfairly permits C.H. Robinson to change the arbitration rules unilaterally and terms merely by changing its rules on its corporate intranet. Poublon apparently relies on the language in the agreement that "any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company intranet."

---

**⁶** In connection with this point, Poublon argues that in prior litigation, C.H. Robinson conceded that the arbitration agreement potentially offered it attorneys' fees for which it might not otherwise be eligible under California law. The record does not establish such a concession; rather, C.H. Robinson declined to contest this issue.

This claim is meritless. Under California law, a contract and a document incorporated by reference into the contract are read together as a single document, *see Standard Iron Works v. Globe Jewelry & Loan, Inc*., 164 Cal. App. 2d 108, 117 (1958), and "what is being incorporated must actually exist at the time of the incorporation, so the parties can know exactly what they are incorporating," *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1194 (2009) (emphasis omitted). "Put another way, to have a valid incorporation by reference, the terms of the document being incorporated must be known or easily available to the contracting parties." *Id.* (internal quotation marks omitted). If a provision or term of an incorporated document "does not exist at the time of incorporation by reference," then it "fails the elementary test of being known or easily available at the time of incorporation." *Id.* Accordingly, at the time Poublon executed the Incentive Bonus Agreement, it incorporated the then-existing Arbitration Procedure, regardless whether this document was attached to the contract or was posted on the company intranet. *See DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 714 (2009) ("The clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, *at the time of contracting, the parties consented to those terms*." (emphasis added)); *see also Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55–56 (1997) (holding that a patent agreement between a teacher and university incorporated the terms of a patent policy in effect at the time the teacher signed the agreement). While the parties may agree to incorporate a document as it is updated or amended, *see Tompkins*, 840 F.3d at 1032 n.9 (construing a contract that expressly permitted the defendant to "make changes to the [contract] from time to time"), the parties did not do so here; nothing in the dispute resolution provision gives C.H.

Robinson the authority to modify any part of the agreement unilaterally, including any incorporated document. Moreover, even had C.H. Robinson included a unilateral modification clause, "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Id.* at 1033. Accordingly, the incorporation provision is not substantively unconscionable.

7

*Discovery Limitations.*   Both the dispute resolution provision and the Arbitration Procedure address the scope of discovery.   The dispute resolution provision includes the following:

> [E]xcept on a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side . . . In the case of any conflict between the rules and procedures for either mediation or arbitration, the priority and order of precedence shall be as follows: (1) the rules and procedures stated herein; (2) the Company's Employment Dispute Mediation/Arbitration Procedure; (3) the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

Section II(g) of the Arbitration Procedure, "Pre-Hearing Discovery," provides four paragraphs of guidance on the conduct of discovery.  As relevant here, the section provides:

> Upon request, either Party shall be entitled to receive, prior to the hearing, information and copies of documents that meet the criteria for discovery. Upon request, the Employee shall also be entitled to a true copy of his or her personnel records kept in the ordinary course of business (including without limitation any and all performance valuations), other than records relating to pre-employment procedures and any reference checks, subject to any condition or limitation imposed by the Arbitrator upon a showing of good cause.

> Upon request, the Employee shall be entitled, at least thirty (30) days in advance of the commencement of the hearing, to take at least one deposition of a Company representative designated by the Employee. . . . Any dispute relative to discovery shall be presented to the Arbitrator for final and binding resolution. The Arbitrator may grant, upon good cause shown, either Party's request for discovery in addition to or limiting that for which this paragraph expressly provides.

Poublon argues that these limitations on discovery are substantively unconscionable, because they allow less discovery than the federal rules and are insufficient to allow her to arbitrate her claims.

Again, we reject this argument. The California Supreme Court has made clear that "limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'" *Armendariz*, 24 Cal. 4th 83 at 106

n.11 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)); *see also Dotson*, 181 Cal. App. 4th at 983 (holding that "discovery limitations are an integral and permissible part of the arbitration process"). Because "arbitration is meant to be a streamlined procedure," parties may agree to limit the number of depositions and impose other restrictions. *Dotson*, 181 Cal. App. 4th at 983. But while limitations on discovery are permissible in an arbitration agreement, California has made clear that a court must balance the "desirable simplicity" of limiting discovery with employees' need for discovery "sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." *Armendariz*, 24 Cal. 4th at 106.

In finding this balance, California courts look to the amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by plaintiffs that the discovery limitations will prevent them from adequately arbitrating their statutory claims. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 715–18 (2004); *CarMax*, 224 Cal. App. 4th at 404–06. In *Fitz*, the court considered an agreement that limited the plaintiff to two depositions and no written discovery, with additional discovery permitted only if the requesting party could demonstrate a compelling need, meaning that a fair hearing would be impossible without additional discovery. 118 Cal. App. 4th at 717–18. The employee estimated that she would have to depose eight to ten witnesses in order to vindicate her claim against the employer. *Id.* at 717. The court concluded that the only way the employee could gain access to "necessary information to prove the claim is to get permission from the arbitrator for additional discovery" under the burdensome impossibility

standard. *Id*. Because the employee should not "be forced to demonstrate this impossibility to an arbitrator before being granted access to the type of discovery that is necessary for a fair opportunity to vindicate her claim," the California Court of Appeal held that the discovery limitations were substantively unconscionable. *Id*. at 719.

In *CarMax*, by contrast, the dispute resolution provision provided for "disclosure of relevant documents and production of the personnel file upon request, with each party under a continuing obligation to supplement its initial disclosure" and limited "each party to 20 interrogatories and three depositions." 224 Cal. App. 4th at 404. The dispute resolution provision also stated "that on request of any party and a showing of 'substantial need,' the arbitrator may allow additional discovery if it 'is not unduly burdensome and will not unduly delay the conclusion of the arbitration.'" *Id.* Further, the employee did not show "how the limitation on discovery would prevent him from vindicating his rights in his particular case." *Id.* Rather, the employee argued that the substantial need standard was per se too stringent. *Id.* The California Court of Appeal rejected this argument, noting that in the dispute resolution provision at issue in its case, the discovery provisions were "considerably more liberal" than they were in *Fitz*, and the employee could get additional discovery merely by showing substantial need, rather than compelling need as in *Fitz*. *Id.* at 405. *CarMax* also noted that the employee did not "make any showing that he could not maintain his claim without more discovery than that provided by the agreement." *Id.* Accordingly, *CarMax* concluded that the discovery provisions were not substantively unconscionable. *Id.* at 405–06.

Here, the discovery limitations and evidence presented are more similar to those in *CarMax* than those in *Fitz*. Reading the dispute resolution provision and the Arbitration Procedure together, Poublon can obtain all "relevant documents," request her personnel records, and take three depositions. Poublon can obtain additional discovery merely by showing good cause, which would include a demonstrated need for discovery "sufficient to adequately arbitrate" her claim. *See Armendariz*, 24 Cal. 4th at 106. Finally, Poublon fails to make any showing that she would be unable to vindicate her rights under the standard provided in the agreement. *See CarMax*, 224 Cal. App. 4th at 405–06. Accordingly, the discovery limitations provision is not substantively unconscionable.

8

*Reaffirmation Clause.* The final provision in the Incentive Bonus Agreement states: "I reaffirm and agree anew to abide by all of my prior agreements with Company as a necessary condition of receiving the benefits under this Agreement." Poublon contends that this reaffirmation provision means that she is reaffirming an illegal noncompetition agreement with C.H. Robinson. We decline to consider this argument. This provision is not part of the dispute resolution provision, either directly or as incorporated by reference. Our "authority to review portions of the contract outside the arbitration provision is limited." *Tompkins*, 840 F.3d at 1032. *Rent-A-Center, West, Inc. v. Jackson* stated that "[i]t may be that" where a plaintiff challenges "the validity under § 2 of the precise agreement to arbitrate at issue" on the ground that certain general contract provisions "*as applied*" to the agreement to arbitrate render it unconscionable, such a "challenge should [be] considered

by the court." 561 U.S. 63, 71, 74 (2010) (emphasis in original). Here, Poublon fails to explain how the provision reaffirming prior agreements applies to the agreement to arbitrate so as to render it unconscionable. Therefore, it is up to the arbitrator to evaluate whether the provision reaffirming previous agreements is unenforceable.

C

If a California court concludes that a contract contains one or more unconscionable clause, it may: (1) refuse to enforce a contract that was "unconscionable at the time it was made"; (2) "enforce the remainder of the contract without the unconscionable clause"; or (3) "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). A court may "refuse to enforce the entire agreement" only when it is "'permeated' by unconscionability." *Armendariz*, 24 Cal. 4th at 122 (citing Cal. Civ. Code § 1670.5, Legis. Comm. Comments, n.2); *see also Ajamian*, 203 Cal. App. 4th at 802 ("[T]he strong preference is to sever unless the agreement is 'permeated' by unconscionability." (emphasis omitted)).

"Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599; *see also Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1157 (2011) ("Civil Code section 1599 codifies the common law doctrine of severability of contracts."). By contrast, a contract is permeated with unlawfulness (and severance is inappropriate) where "[t]he good cannot be separated from the bad, or rather the bad enters into and permeates the whole contract, so that none of it can be said to be good." *Keene v. Harling*, 61 Cal. 2d 318,

322 (1964) (quoting *Santa Clara Val. M. & L. Co. v. Hayes*, 76 Cal. 387, 393 (1888)). In other words,"[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008) (internal quotation marks and citations omitted). On the other hand, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.*

In *Armendariz*, the California Supreme Court considered whether a trial court had abused its discretion in refusing to enforce a contract due to the presence of two unlawful provisions in an arbitration agreement. 24 Cal. 4th at 122–27. The court first reiterated the general rule that a court should not enforce a contract if its central purpose is "tainted with illegality," but should enforce the contract if "the illegality is collateral to the main purpose of the contract" and the illegal provisions "can be extirpated from the contract by means of severance or restriction." *Id.* at 124. Applying this rule, *Armendariz* concluded that the trial court had not abused its discretion because two factors weighed against severing the unlawful provisions. First, the court noted that the arbitration agreement contained "more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause." *Id.* According to the court, "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* Second, *Armendariz* stated that the contract as a whole lacked mutuality, and therefore "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the

agreement." *Id.* at 124–25. *Armendariz* concluded that "severance or restriction" would not cure the unconscionability, and therefore "it must void the entire agreement." *Id.* at 125.

Poublon argues that an agreement is necessarily permeated by unconscionability if more than one clause in the agreement is unconscionable or illegal. We disagree; California courts have not adopted such a per se rule. Following *Armendariz*, California courts have held that a factor weighing against severance exists when "the agreement contains more than one objectionable term" which "may indicate a systematic effort to impose arbitration on an employee." *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008) (internal quotation marks omitted). But this is only one of the relevant factors; California courts also consider whether "the central purpose of the contract is tainted with illegality," and whether "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.; see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1074 (2003); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 184–85 (2002).[7] In

---

[7] Poublon argues that *Magno v. Coll. Network, Inc.*, supports her contention that California has adopted a per se "two-strikes" rule, because it states that "[a]n agreement to arbitrate is considered 'permeated' by unconscionability where it contains more than one unconscionable provision." 1 Cal. App. 5th 277, 292 (2016). We disagree. *Magno* followed this statement by reciting the rule that an arbitration agreement is deemed "permeated" by unconscionability if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement," and then proceeded to affirm the trial court's decision to void the entire arbitration agreement only because the unconscionability could not be cured by severance. *Id.* at 292–93. Reading the sentence excerpted by Poublon in context, therefore, *Magno* is consistent with the California Supreme Court's decision in

each case, the dispositive question is whether "the central purpose of the contract" is so tainted with illegality that there is no lawful object of the contract to enforce. *Marathon Entm't*, 42 Cal. 4th at 996.

In this case, severance is appropriate. Per C.H. Robinson's concession, there is one unconscionable clause in the dispute resolution provision, the portion of the dispute resolution provision that permits C.H. Robinson, but not Poublon, to seek judicial resolution of specified claims. This provision can be extirpated without affecting the remainder of the paragraph and is "collateral to the main purpose of the contract," which is to require arbitration of disputes. *Id*. Second, the waiver of representative claims is unenforceable to the extent it prevents an employee from bringing a PAGA action. This clause can be limited without affecting the remainder of the agreement. *Iskanian*, 59 Cal. 4th at 391 (holding that an employer "cannot compel the waiver of [the employee's] representative PAGA claim but that the agreement is otherwise enforceable according to its terms"); *see also Sakkab*, 803 F.3d at 440 (limiting the PAGA waiver and holding that non-PAGA claims must be arbitrated). Finally, the fourth paragraph of the dispute resolution provision allowing modifications "to the extent necessary, consistent with [the agreement's] fundamental purpose and intent, in order to make it enforceable" makes clear that the parties intended for any invalid portion of the agreement to be restricted.

---

*Armendariz*, 24 Cal. 4th at 122–27, and *Sanchez*, 61 Cal. 4th at 912, as well as with California's "very liberal view of severability," *Adair v. Stockton Unified Sch. Dist.*, 162 Cal. App. 4th 1436, 1450 (2008).

Accordingly, we conclude that the dispute resolution provision is valid and enforceable once the judicial carve-out clause is extirpated and the waiver of representative claims is limited to non-PAGA claims, and the district court erred in holding otherwise.

**REVERSED AND REMANDED.**