Filed 12/30/25  Rahme v. The Bicycle Casino CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GEORGE RAHME, | B340203 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23STCV16017) |
| v. | |
| THE BICYLE CASINO, L.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph M. Lipner, Judge.  Affirmed.

CAF Law Group and Carla J. Feldman; Greines, Martin, Stein & Richland, Robin Meadow, Jeffrey E. Raskin, and Alex Chemerinsky for Defendant and Appellant.

Shegerian & Associates, Carney R. Shegerian, Jill McDonell, Anthony Nguyen and Gevik Yenoki for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff George Rahme sued his former employer, The Bicycle Casino (TBC), for discrimination, retaliation, and wrongful termination. TBC moved to compel arbitration based on two arbitration agreements: one signed in 2001, and one signed in 2018. Rahme opposed TBC's motion, contending that the 2018 agreement was unconscionable. The trial court agreed with Rahme. The court also rejected TBC's alternative argument that if the 2018 agreement were deemed unenforceable, the 2001 agreement should control. The court therefore denied TBC's motion.

TBC appealed. It asserts that the evidence does not support a finding of either procedural or substantive unconscionability. TBC also argues that if the 2018 agreement is deemed unenforceable, the 2001 agreement nevertheless compels arbitration. We find that the 2018 agreement is unconscionable and unenforceable. We also find no abuse of discretion in the court's conclusion that TBC forfeited its argument about the 2001 agreement by failing to assert it until its supplemental briefing. We further find no support for TBC's argument that the 2001 agreement is enforceable under these circumstances. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

Rahme filed a complaint in July 2023 alleging the following facts. Rahme, a Middle Eastern and Lebanese man, was hired by TBC in 1985 as a manager. At all times, he performed his job "in an exemplary manner." He was 64 years old at the time the complaint was filed. TBC's CEO, defendant Hashem Minaiy, made comments to Rahme about his age and appearance, such

as, "You look like you just woke up," "You have to lose weight," "You should retire," and "You're getting old." Minaiy also commented about Rahme's national origin, saying things such as, "Go back to Lebanon," and "I will make you a bus driver and send you back to Lebanon."

In 2021 Rahme learned that TBC had been sold; the new CEO was John Park. Minaiy told Rahme that Park did not like Rahme. In January 2022 Rahme was offered severance pay if he resigned, and Minaiy told Rahme, "You might as well take this severance pay and leave because [Park] does not want you here." Rahme declined. In April 2022, Rahme met with Park, who told Rahme that he was not a good fit for the team Park was putting together. Rahme, trying to preserve his employment, requested a demotion to shift manager; Park denied the request. Thus, Rahme's "decades long employment was wrongfully terminated without severance pay."

Rahme's complaint included 10 causes of action: 1. Discrimination based on race, national origin, age, and ancestry in violation of the Fair Employment and Housing Act, Government Code section 12900, et seq. (FEHA); 2. hostile work environment based on race, national origin, age, and ancestry in violation of FEHA; 3. retaliation in violation of FEHA; 4. failure to prevent discrimination, harassment, or retaliation under FEHA; 5. breach of express oral contract not to terminate employment without good cause; 6. breach of implied-in-fact contract not to terminate employment without good cause; 7. negligent hiring, supervision, and retention; 8. wrongful termination in violation of public policy; 9. whistleblower retaliation; and 10. intentional infliction of emotional distress.

Rahme sought general and special damages, punitive damages, attorney fees, costs, and declaratory relief.

## B.     Motion to compel arbitration

### 1.     Motion

In January 2024 TBC filed a motion to compel arbitration.[1] It attached two arbitration agreements: one Rahme signed in 2001, and one Rahme signed in 2018. The 2001 agreement stated that Rahme and TBC agreed that "any claim, dispute, and/or controversy that either [Rahme] or The Bicycle Casino may have against the other arising from, related to, or having any relationship or connection whatsoever with [Rahme's] seeking employment with, employment by, or other association with The Bicycle Casino, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act[, 9 U.S.C. § 1, et seq. (FAA)], in conformity with the procedures of the California Arbitration Act[, Code Civ. Proc., § 1280 et seq. (CAA)]." The 2001 agreement further stated, "this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company. [¶] Should any term or provision, or portion thereof, be declared void or unenforceable, it shall be severed and the remainder of this agreement shall be enforceable."

The 2018 agreement was about 1.25 pages long. Paragraph 1 was an "at-will provision," with a blank place for an employee to fill in a name. It stated that Rahme and TBC or "the Company" agreed that either could terminate "their employment

---

[1]     The record is not clear as to whether Minaiy joined the motion. TBC is the sole appellant, so we discuss it herein as TBC's motion.

4

relationship at any time, with or without cause, and/or with or without notice."

Paragraphs 2 and 3 were under the heading "Arbitration Provision." Paragraph 2 was a dense paragraph of 35 lines, stating that Rahme and TBC "agree and acknowledge that the Company and [Rahme] will utilize binding arbitration to resolve all disputes that may arise out of the employment relationship between the Company and [Rahme], including, but not limited to, the termination of [Rahme's] employment . . . ." Arbitration would be conducted under the FAA, in conformity with the procedures of the CAA. The scope of the agreement included claims "based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, the California Labor Code, the Fair Labor Standards Act, or any other state, local, or federal law or regulation, common or equitable law, or otherwise, with the exception of claims arising under the National Labor Relations Act, which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Worker's Compensation Act, Employment Development department claims, or as otherwise required by state, local, or federal law." It stated that TBC and Rahme "will each be responsible for our own attorneys' fees and costs."

Paragraph 3 of the 2018 agreement included a waiver of any class claims and continued, "[Rahme] and the Company further agree that there will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general representative action ('Private Attorney General

5

Waiver').[2] The Class and Collective Action Waiver and the Private Attorney General Waiver shall not be severable under any circumstances."

Paragraphs 4 through 6 of the 2018 agreement were under the heading "Miscellaneous." Paragraph 4 stated in full, "This is the entire agreement between the Company and me regarding dispute resolution and the nature of my employment, and this Agreement supersedes any and all prior agreements regarding these Issues." Paragraph 5 stated that "any agreement contrary to the foregoing must be entered into, in writing, by the Chief Executive Officer (CEO) of the Company." Paragraph 6 stated that if any term of the agreement were deemed void it was severable, "except as provided in section 3 above." The agreement had lines for Rahme's signature, a printed name, a date, and a badge number. It was signed and dated August 14, 2018.

TBC sought a stay and an order compelling the parties to arbitration. In its notice of motion, TBC stated, "Plaintiff George Rahme signed Arbitration Agreements on May 6, 2006 [*sic*], and August 18, 2018 [*sic*] which contain identical language which apply [*sic*] to any and all claims arising from or connected to or associated with his employment with TBC (the 'Agreements'), including disputes involving wages, and his employment with TBC, which the Agreement survives [*sic*]." TBC submitted the two agreements as a single exhibit and did not differentiate between them in asserting that arbitration was required. TBC quoted language from the 2001 agreement about arbitrating employment-related claims. TBC further contended that when

---

2       See the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).

6

the casino was sold to an "unrelated" party following the Covid-19 pandemic, all TBC employees were terminated with "no discrimination or animus."

**2.  Opposition**

Rahme opposed TBC's motion, focusing on the 2018 agreement and contending it was unenforceable.  Rahme asserted that he never signed the arbitration agreement, submitting a declaration stating that he did not recall signing the agreements submitted with TBC's motion.  Rahme stated in his declaration, "I never knowingly signed or consented to any arbitration provision. As such, I was never given the opportunity to negotiate the terms of the agreement."

Rahme also argued that the agreement was unenforceable because it was procedurally and substantively unconscionable. Rahme argued the agreement was procedurally unconscionable because it was mandatory and he had no meaningful opportunity to negotiate its terms.  Rahme asserted that the agreement was substantively unconscionable because it gave TBC the unilateral right to terminate or modify the agreement.

Rahme further asserted that the PAGA waiver in the 2018 agreement rendered it unenforceable under California law. Rahme asked that the motion be denied, or in the alternative, for an opportunity to "conduct discovery on defendants' extrinsic evidence" and have an evidentiary hearing.

TBC filed a reply in support of its motion.

**3.  Supplemental briefing**

The court granted Rahme's request for an evidentiary hearing; it was held on April 19, 2024.  No court reporter was present. After Rahme testified, the court found that Rahme had signed the arbitration agreements.

7

The court requested that the parties file supplemental briefs regarding the PAGA waiver in the 2018 agreement, including the statement in the 2018 agreement that the PAGA waiver "cannot be severed under any circumstances."

In TBC's supplemental brief, filed in May 2024, TBC acknowledged that contractual PAGA waivers are unenforceable. (See, e.g., *Adolph v. Uber Technologies, Inc*. (2023) 14 Cal.5th 1104, 1117 (*Adolph*) ["a predispute categorical waiver of the right to bring a PAGA action is unenforceable"]; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382-383 (*Iskanian*), abrogated on other grounds by *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*).[3]) TBC argued, "In the instant matter, no PAGA claim has been asserted, either individually or on a representative basis. As such, the PAGA waiver in the Agreement is irrelevant and has no bearing on the case." TBC further argued that the PAGA waiver "does not make the agreement null and void, or unenforceable per se. It is only where Plaintiff is left without remedy that the entire agreement can be invalidated or rendered unenforceable." TBC also asserted that if the court were to deem the 2018 agreement invalid, "then the 2001 agreement would control and arbitration should be compelled in any event."

In Rahme's supplemental brief, he asserted that TBC's arguments were "full of red herring[s]." Rahme noted that the PAGA waiver stated that it "cannot be severed under any

---

[3]     "*Viking River* held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.'" (*Adolph, supra*, 14 Cal.5th 1104, 1118, quoting *Viking River, supra*, 596 U.S. at p. 662 [142 S.Ct. at p. 1924].)

circumstances," and argued that none of TBC's authorities "addressed an arbitration agreement where the [agreement] specifically included . . . language that prohibits any court from severing the PAGA" waiver. Rahme challenged TBC's "outrageous" suggestion that the 2001 agreement could be deemed enforceable, and asserted that TBC's argument was not supported by either legal authority or the agreements themselves.

### 4. Hearing and court ruling

At the June 6, 2024 hearing following the supplemental briefing, TBC's counsel argued that the 2001 agreement could be enforced if the 2018 agreement were deemed void. The court asked, "[H]ave you briefed at all what happens when [an] agreement from 17 years later . . . is null and void? Does the earlier one spring into existence? [¶] Is there any briefing anywhere in the record about that?" TBC's counsel noted that it filed both agreements with its initial motion to compel arbitration. After further discussion the court said, "So to the extent you want the 2001 agreement to apply now, I think you were required to provide some legal basis for saying how it applies in this situation. I don't think you have done so. I think you have waived the issue." Rahme's counsel argued that despite having "sufficient time for both parties to brief on all issues," TBC had "provided zero authority for the court to use an agreement from 18 years ago [*sic*]."

The court took the matter under submission, then entered a written ruling denying TBC's motion to compel arbitration. The court noted it had already found that Rahme signed the 2018 agreement, and added that Rahme "had no good faith basis to deny the assertion that he signed" both agreements.

9

Regarding procedural unconscionability, the court found that Rahme "was never given the opportunity to negotiate the terms" of either agreement, which "creates a slight, but extant, degree of procedural unconscionability." Turning to substantive unconscionability, the court noted that PAGA cannot be contravened by private agreement. The court stated that "the 2018 Agreement explicitly strips Plaintiff of his right to pursue PAGA claims." The court continued, "TBC argues that the Court should sever any substantively unconscionable portions of the 2018 Agreement. Doing so, however, would violate the terms of the 2018 Agreement itself, which states explicitly that 'the Private Attorney General Waiver shall not be severable under any circumstances.'" The court therefore found that the 2018 agreement was substantively unconscionable.

The court noted that TBC asserted "in its supplemental brief that if the 2018 Arbitration Agreement is unenforceable, the Court should enforce the 2001 Agreement instead of the 2018 Agreement that superseded it. The problem with this argument is that it comes too late in this lengthy adjudication of TBC's arbitration request, which has now been pending for almost six months. Moreover, TBC's new assertion does not address the legal and factual complications it raises. [¶] The Court concludes that TBC waived such an argument by not raising it until the end of the adjudication of the petition to compel arbitration, and by not supporting it with reasoned argument or authority." The court stated that it was not "fair to Plaintiff or an appropriate use of judicial resources to stretch this proceeding about compelling arbitration out beyond the six-month mark to allow TBC to develop and advance a new, late-raised argument."

10

The court further stated that TBC's lack of authority was "not a mere technical detail. To this day, TBC's argument about the 2001 Agreement remains unsupported and unpersuasive." The court noted the 2018 agreement's statement that it superseded all prior agreements, and stated, "Thus, TBC and Plaintiff acknowledged and agreed in 2018 that the 2001 Agreement was no longer in effect," and TBC had not advanced any argument "to explain why the 2001 Agreement should be resurrected." The court therefore denied TBC's motion. TBC timely appealed. (Code Civ. Proc., § 1294, subd. (a).)

## DISCUSSION

### A. Legal authority

TBC asserts that the trial court erred by finding the 2018 agreement unconscionable, and in the alternative, by refusing to enforce the 2001 agreement.

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement." (*Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 492 (*Ramirez*).) "Through the comprehensive provisions of the [CAA], 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution."' [Citation.] As with the FAA (9 U.S.C. § 1 et seq.), California law establishes 'a presumption in favor of arbitrability.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

An arbitration agreement is valid, enforceable and irrevocable, unless it is revocable for reasons that would render any contract revocable under state law. (Code Civ. Proc., § 1281; *Tiri v. Lucky Chances, Inc*. (2014) 226 Cal.App.4th 231, 239; *OTO, supra,* 8 Cal.5th at p. 125.) The party petitioning to enforce

11

an arbitration agreement "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law. [Citation.] If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings." (*Ramirez, supra*, 16 Cal.5th at p. 493.) "Under this deferential standard, "'[a]ll factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment.'"" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121 (*Trinity*).)

## B.    Unconscionability

Where, as here, a party asserts a contract is unenforceable on the basis of unconscionability, that party has the burden to establish unconscionability. (*Ramirez, supra*, 16 Cal.5th at p. 492.) "The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.'" (*Ibid.*) Unconscionability "'is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.'" (*Id.* at p. 493.)

Unconscionability has both a procedural and a substantive element. (*Ramirez, supra*, 16 Cal.5th at p. 492.) "Both

12

procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" (*OTO, supra*, 8 Cal.5th at p. 125.) Rather, unconscionability is evaluated on a sliding scale, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 114 (*Armendariz*); see also *OTO, supra*, 8 Cal.5th at pp. 125-126.)

### 1. Procedural unconscionability

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.'" (*Ramirez, supra*, 16 Cal.5th at p. 492.) "A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, supra*, 8 Cal.5th at p. 126.) When the contract is adhesive, the "pertinent question" is "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*Ibid*.) Oppression may be present when the formation of a contract involves lack of negotiation and meaningful choice, and surprise may be present when the allegedly unconscionable provision is ""'hidden within a prolix printed form.'"" (*Ibid*.)

The 2018 agreement was a standardized contract drafted by TBC and presented to Rahme after he had been employed by TBC for approximately 33 years. As the Supreme Court noted in

13

*OTO, supra*, the economic pressure inherent in employment-related arbitration contracts can be "substantial when employees are required to accept an arbitration agreement in order to *keep* their job. Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market. In both the prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression and overreaching." (*OTO, supra*, 8 Cal.5th at p. 127.)

Rahme stated in his declaration that he did not recall signing the 2018 agreement, and did not recall having any opportunity to negotiate its terms. The trial court noted these statements in Rahme's declaration, and found that the evidence demonstrated "a slight, but extant, degree of procedural unconscionability."

TBC disagrees with this conclusion, stating, "The reality is that there is *no* evidence of procedural unconscionability. Zero." TBC asserts that Rahme's declaration does not constitute competent evidence of the circumstances surrounding the execution of the arbitration agreements, because Rahme said he did not recall signing them. TBC also asserts that there is no evidence that the arbitration agreements were offered on a take-it-or-leave-it basis. It notes that the agreements invited the employee to ask questions of a company representative, and allowed the employee to opt out, so "[t]he choice was Rahme's. He had the power."

The language TBC quotes, however, is only in the 2001 agreement. Similar language does not appear in the 2018

agreement, which by its express terms superseded the 2001 agreement. The 2018 agreement was a standardized contract imposed and drafted by TBC, the party with superior bargaining strength. It began with an "at-will provision" stating that Rahme's employment could be terminated "at any time, with or without cause, and/or with or without notice." It prohibited negotiation by stating that the pre-printed form constituted "the entire agreement" between TBC and the employee, no "supervisor or representative of the Company" could alter the agreement, and "any agreement contrary to the foregoing must be entered into, in writing, by the Chief Executive Officer (CEO) of the Company." TBC argues there is no lack of mutuality because this language simply "defines the *manner* in which *both sides can agree* to modify the arbitration agreement." We are unpersuaded. The pre-printed form with blank spaces for an employee to fill in a name and signature, stating that no one but the CEO has the power to modify it, suggests a lack of opportunity for negotiation or meaningful choice. (See *OTO, supra,* 8 Cal.5th at p. 126.)

To the extent the trial court's unconscionability determination turns on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling. (*Trinity, supra,* 78 Cal.App.5th at p. 1121.) Here, the trial court apparently found Rahme credible. Rahme points out that there was an evidentiary hearing during which he testified about the circumstances surrounding the formation of the agreement; that hearing was not reported, and no transcript is included in the record on appeal.

TBC, the appellant, had the burden to present an adequate record on appeal; in the absence of a contrary showing, we

15

presume the trial court's findings were supported by the evidence presented.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

Similar circumstances occurred in *Trinity, supra*, 78 Cal.App.5th 1111.  There, the plaintiff stated in a declaration that she did not agree to arbitration, and later testified at a hearing that was not reported.  (*Id*. at pp. 1117-1119.)  The Court of Appeal stated, "[A]ny possible inconsistency between Trinity's declaration and deposition testimony was properly resolved by the trial court. The court considered all the evidence, including, critically, Trinity's live testimony during the evidentiary hearing, the contents of which [the defendant] elected not to provide to us, and found credible Trinity's statement she never agreed to arbitrate. We may not reweigh the evidence and are bound by the trial court's credibility determinations."  (*Id*. at p. 1124.)  The same is true here, where Rahme testified about the circumstances surrounding the formation of the agreement in a hearing that was not reported.  (See also *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067 ["'We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence'"].)

Rahme also argues the agreement was procedurally unconscionable on the basis of surprise.  In *OTO, supra*, 8 Cal.5th 111, the Supreme Court found surprise where the substance of the arbitration agreement was "opaque": "The agreement is a paragon of prolixity, only slightly more than a page long but written in an extremely small font.  The single dense paragraph covering arbitration requires 51 lines."  (*Id*., at p. 128.)  The court continued, "The sentences are complex, filled with statutory references and legal jargon. The second sentence alone is 12 lines

16

long. . . . A layperson trying to navigate this block text, printed in tiny font, would not have an easy journey." (*Ibid*.)

Rahme asserts that the font size on the 2018 agreement is even smaller than that in *OTO*. TBC argues there was no surprise, because the 2018 agreement "is just two pages long and covers only two subjects." We agree that the dense block of legal text in tiny font—which references multiple laws; exceptions; and undefined local, state, and federal laws and regulations—is barely legible and virtually impenetrable to a layperson.[4] As in *OTO*, this also supports a finding of procedural unconscionability. Thus, Rahme met his burden to show procedural unconscionability. We therefore turn to substantive unconscionability.

### 2. Substantive unconscionability

"Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms.'" (*Ramirez, supra*, 16 Cal.5th at p. 493.) This analysis "'is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."'" (*OTO, supra*, 8 Cal.5th at p. 130.)

The 2018 agreement purported to hold that the parties "agree that there will be no right or authority for any dispute to be brought, heard, or arbitrated as a private attorney general

_____

[4]     TBC asserts that the document in the record is not its original size, and if it looks small, "the blame lies with Rahme" because he had the "burden to establish his unconscionability defense." We find this argument disingenuous; the only version of the arbitration agreement in the record is the one submitted by TBC.

representative action." The trial court found the 2018 agreement substantively unconscionable because it "explicitly strips Plaintiff of his right to pursue PAGA claims." Rahme met his burden to show that this provision is substantively unconscionable and against public policy.

California law is clear that "where, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra*, 59 Cal.4th at p. 384; see also *Nickson v. Shemran, Inc*. (2023) 90 Cal.App.5th 121, 129 ["even after *Viking River*, a contractual waiver of the right to prosecute PAGA claims is unenforceable as against California public policy"]; *Adolph, supra,* 14 Cal.5th at p. 1118.)

Many cases have held that such a waiver is also substantively unconscionable. In *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, for example, the Court of Appeal found an arbitration agreement substantively unconscionable, noting that the agreement "required those who signed it to waive any right to bring a representative action under [PAGA], despite the fact that 'an employee's right to bring a PAGA action is unwaivable.'" (*Najarro, supra*, 70 Cal.App.5th at p. 882, quoting *Iskanian, supra*, 59 Cal.4th at p. 383.) Several other cases have reached the same conclusion. (See *Hasty v. American Automobile Assn.* (2023) 98 Cal.App.5th 1041, 1063 (*Hasty*) [after *Viking River*, "The ban on all representative [PAGA] actions thus remains unconscionable because it requires an employee to waive a right that is not waivable"]; *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 495 (*Alberto*) ["Both before and after *Viking River Cruises*, blanket waivers of PAGA claims are unconscionable"]; *Subcontracting Concepts (CT), LLC v. De Melo*

18

(2019) 34 Cal.App.5th 201, 212-213 (*Subcontracting Concepts*) [the contract's "numerous substantively unconscionable provisions" included a PAGA waiver].)[5]

The PAGA waiver in the 2018 agreement is unconscionable under the reasoning of these cases. A contractual term may be unconscionable when it contravenes public interest or public policy (*OTO, supra*, 8 Cal.5th at p. 130), and a contractual term that "compels the waiver of representative claims under the PAGA . . . is contrary to public policy." (*Iskanian, supra*, 59 Cal.4th at p. 384.)

Moreover, this provision is unreasonably favorable to TBC. An "employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81, italics omitted.) "Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Ibid.*) Thus, the PAGA waiver in the 2018 agreement not only barred Rahme from seeking such remedies, it also freed TBC from the risk of enforcement under PAGA on behalf of other aggrieved employees and the public. An employer's inclusion of an unenforceable PAGA waiver that undermines the statutory protections provided to employees and the public, which benefits only the employer, is unfairly one-sided and unduly oppressive, and therefore unconscionable. (See, e.g., *Sonic-Calabasas A, Inc.*

---

[5] We note that for purposes of an unconscionability analysis, it is irrelevant that Rahme did not assert any PAGA claims. We review for substantive unconscionability at the time the agreement was made. (See *Najarro, supra*, 70 Cal.App.5th at p. 882-883; *Hasty, supra*, 98 Cal.App.5th at p. 1063; *Subcontracting Concepts, supra,* 34 Cal.App.5th at p. 212.)

*v. Moreno* (2013) 57 Cal.4th 1109, 1145 [unconscionable terms include "'terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law'"].)

TBC argues that such an analysis conflates the concepts of unenforceability and unconscionability, and that *Hasty* "shoehorn[ed] a PAGA waiver into an unconscionability analysis." TBC does not cite *Najarro, Alberto,* or *Subcontracting Concepts.* Rather, TBC relies on *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251, 1264, which predated these three California cases and stated, "We are not aware of a California case holding that a PAGA waiver is substantively unconscionable." TBC also cites *Keebaugh v. Warner Bros. Entertainment Inc.* (9th Cir. 2024) 100 F.4th 1005, 1023, which discussed *Poublon* but did not involve a PAGA waiver or related analysis. These cases are not instructive or persuasive, because they do not reflect the current state of California case law.

Rahme asserts that additional parts of the 2018 agreement are substantively unconscionable. For example, the 2018 agreement requires an employee to arbitrate any claims brought under FEHA, and also states that TBC and Rahme "will each be responsible for our own attorneys' fees and costs." Thus, although FEHA allows a court to award attorney fees and costs to the prevailing party (Gov. Code, § 12965, subd. (c)(6)), the arbitration agreement required Rahme to forfeit any such recovery. Depriving an employee of the right to recover attorney fees for bringing certain statutory claims is both a violation of public policy and unconscionable. (See, e.g., *Armendariz, supra*, 24 Cal.4th at p. 103 [in the context of FEHA, "an arbitration agreement may not limit statutorily imposed remedies such as . .

. attorney fees"]; *id.* at pp. 110-111 [an employment arbitration agreement "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"]; *Ramirez, supra*, 16 Cal.5th at p. 508 [a "provision [that] creates a potential obligation to pay costs only in an arbitral setting" would "undermine the public policy embodied in FEHA's asymmetric [attorney fee] rule" and is unconscionable].)

The PAGA waiver and deprivation of fees under FEHA are unfairly one-sided, unreasonably favorable to TBC, and unreasonably unfavorable to Rahme. They also contravene public policy by undermining statutory schemes intended to protect workers and the public.  Applying a sliding scale and considering the moderate procedural unconscionability, the substantive unconscionability is sufficiently high to render the arbitration agreement unenforceable.

TBC does not contend on appeal that the unconscionable provisions of the 2018 agreement may be severed.  (See Civ. Code, § 1670.5, subd. (a).)  We therefore turn to TBC's alternative argument.

## C.    The 2001 agreement

TBC contends that even if the 2018 agreement is unenforceable, the 2001 agreement nevertheless compels arbitration.  TBC reasons that if the 2018 agreement has no effect, arbitration may proceed as though the 2001 agreement were the only agreement between the parties.  The trial court rejected this argument because TBC  failed to timely assert it, and because the court found it to be unsupported by legal authority.  We find no error.

21

First, we find no abuse of discretion in the trial court's conclusion that TBC forfeited this argument by failing to timely assert it. The "general rule of motion practice" is that it is inappropriate to assert new arguments or evidence in reply papers or supplemental briefing, and a trial court has discretion to disregard such arguments. (See, e.g., *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538; *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 227; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:106.1 ["It is a serious mistake to leave key arguments for the reply brief . . . . The court is likely to *refuse to consider new evidence or arguments first raised in reply papers . . . .*]".)[6]

Here, TBC asserted in its motion and reply that arbitration was required under the two arbitration agreements. It made no distinction between the two agreements. Rather, TBC submitted the two agreements as a single exhibit, referred to them as "the Agreements," and quoted language to support its position without noting which agreement contained the language.[7] Notably, TBC did *not* assert that arbitration could be compelled under the 2001

---

[6] The parties discuss cases regarding waiver of a party's right to seek arbitration, including the recent case *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, and they disagree about the applicable standard of review. The issue here, however, is not TBC's right to seek arbitration generally (which TBC asserted in its motion), but instead whether the court was obligated to entertain a new legal theory TBC asserted for the first time in supplemental briefing.

[7] Several quotes in TBC's motion attributed to the arbitration agreements include language that does not appear in either agreement. None of the quotes includes a citation to a particular agreement or paragraph within an agreement.

22

agreement alone. TBC first raised this argument only after the court requested supplemental briefing about the effect of the unenforceable and nonseverable PAGA waiver—five months after TBC filed its motion to compel arbitration, and after the court had already held two hearings on the issue. Arbitration is intended to be ""a speedy and relatively inexpensive means of dispute resolution."" (*OTO, supra*, 8 Cal.5th at p. 125.) We find no abuse of discretion in the trial court's conclusion that TBC forfeited its alternative theory by failing to assert it earlier.

Second, TBC has failed to demonstrate that the 2001 agreement is enforceable. "[A]rbitration is premised on the parties' mutual consent." (*OTO, supra*, 8 Cal.5th at p. 137.) Thus, in order for the 2001 agreement to be enforceable, TBC must show that the parties intended it to control Rahme's claims. (See, e.g., *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 ["'In determining whether an arbitration agreement applies to a specific dispute, [the court considers] the agreement itself and the complaint'"].)

The 2018 agreement states that it "is the entire agreement between the Company and [Rahme] regarding dispute resolution and the nature of [Rahme's] employment, and this Agreement supersedes any and all prior agreements regarding these issues." Even though the 2018 agreement is not enforceable as a contract, this language constitutes evidence that the parties did not intend the 2001 agreement to extend beyond the signing of the 2018 agreement. There is no other evidence suggesting that the parties intended the 2001 agreement to remain in effect beyond 2018. Assuming Rahme's claims are timely under the statute of limitations, they arose within a few years of his complaint filed in 2023—after the parties expressed their intention that the 2001

23

agreement was no longer valid. Moreover, TBC cites no legal authority suggesting that an abandoned contract may spring back to life if a subsequent contract is deemed unenforceable. TBC therefore has failed to demonstrate that the 2001 agreement alone constitutes an enforceable arbitration agreement applicable to Rahme's claims.

## DISPOSITION

The trial court's order denying TBC's motion to compel arbitration is affirmed. Rahme is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, ACTING P. J.

We concur:

TAMZARIAN, J.

CHAVEZ, J.*

---

\* Justice of the Court of Appeal, Second Appellate District, Division Two, assigned to Division Four, by the Chief Justice pursuant to article VI, section 6 of the California Constitution.